John Herman McClellan was convicted for sexual abuse in the second degree in violation of Alabama Code 1975, § 13A-6-67, and sentenced to six months in the county jail. On this appeal from that conviction, McClellan contends that his conviction should be reversed because of the admission of evidence of an uncharged offense. We agree.
Prior to trial, the defendant filed a motion in limine seeking an order to prevent the State from introducing "any evidence of any and all unindicted acts of sexual misconduct of Defendant with anyone other than the alleged victim in this case." The record does not show exactly when this motion was denied but only that it was denied prior to the testimony of the State's rebuttal witness, J.W.
The State's evidence tends to show that the defendant sexually abused his 14-year-old stepdaughter, M.K., on April 24, 1989. On its case in rebuttal, the State presented the testimony of J.W. She testified that she was a cousin of the defendant's wife (the mother of the victim in this case). The substance of her testimony was that eight years before, when she was 14 years of age, the defendant touched her in a very similar manner and under very similar circumstances *Page 342 
to the manner in which the defendant abused M.K. in this case.
The record shows that the subject of the defendant's sexual abuse of J.W. had previously been injected into this case without objection. On direct examination, the victim's mother, P.M., testified that the defendant had never done anything to either her children or the defendant's own daughter that would indicate he was not a good father. On cross-examination by the district attorney, the following occurred:
 "Q. And you have testified that he had always been a good father.
"A. Yes, sir.
 "Q. And you had never had any information contrary to that?
"A. Yes, sir.
 "Q. That he had never done anything to any of the children or anybody else in your custody and care, right?
"A. Right.
 "Q. Have you ever had anybody — not what you know now because we have established about that criteria — not what you know; but, have you ever had reason to suspect otherwise?
"A. No, sir.
"Q. Ever?
"A. No.
 "Q. Did you have other children to come visit and stay overnight?
"A. Yes, sir.
 "Q. Any reports from any of those children come back to you?
 "A. They never did come to me about it if they did.
"Q. You have never had that reported to you ever?
"A. Just hearsay.
"Q. Just hearsay?
"A. Uh-huh.
 "Q. That's what I am saying, just hearsay; but, you didn't believe that either, did you?
"A. No, sir.
 "Q. So you discounted it. On how many occasions have you gotten hearsay reports from children who have stayed over there relative to that?
"A. Two.
"Q. Did you ever discuss it with your husband?
"A. We talked about it.
"Q. What did he tell you?
 "A. He — well, with Julie he said he put his hand over on her leg, and with Jennifer he didn't do anything.
 "Q. All he did was put his hand over on her leg and with the other one he didn't do anything?
"A. Yes, sir.
 "Q. How old were these children? Of course, I believe he also said it was kind of their fault, didn't he, that they led him on?
"A. Yes, sir.
"Q. How old were these children at that time?
"A. Thirteen or fourteen."
On redirect examination, Mrs. P.M. testified that the defendant "has been a good father to her children" and that he never did anything to hurt them.
On further cross-examination by the prosecutor, the following occurred:
 "Q. The report that [M.K.] made to you about the particulars of the incident, did it sound like the particulars of any other reports you had ever heard?
"A. Yes, sir.
"Q. It did?
"A. Yes, sir.
 "Q. In fact the method of this occurrence was identical to the other report?
"A. Yes, sir.
"MR. POSEY [Defense Counsel]: I object to this.
"Irrelevant, impermissible evidence.
"THE COURT: Overruled.
 "Q. And, of course, you had never discussed these other reports with [M.K.]?
"A. No, sir.
"Q. She had no way of knowing about them?
"A. No, sir.
 "Q. And yet you didn't attach any credibility to a report from your daughter which is identical, that she couldn't have known about this other thing, that's identical *Page 343 
to an allegation that your younger sister — or what was the relationship?
"A. Younger cousins.
 "Q. Younger cousins had made to you years before that?
"A. No, sir.
"Q. You just didn't attach anything to that?
 "A. I felt like she was having a dream about her real dad because two and a half years ago —
 "Q. No, what I am asking you, ma'am, you didn't attach any significance at all to the similarities of those two reports?
"A. No, sir."
On redirect examination by defense counsel, the following occurred:
 "Q. Had [M.K.] ever talked to you about [M.K.'s 'real father'] sexually molesting her?
"A. Yes, sir.
"Q. When did that occur?
"A. In 1986.
 "Q. All right. And when [M.K.] said that her real father had sexually molested her, was that story similar to the one she had given in this case?
"A. Yes, sir.
"Q. In fact exactly the same?
"A. Yes, sir.
"Q. Is that true?
"A. Yes, sir.
 "Q. It don't involve [the defendant] at all, does it?
"A. No, sir."
The defendant testified in his own behalf and denied ever sexually abusing M.K. and denied the particular incident in question. On cross-examination, the defendant admitted, without objection, that he had heard rumors that he had sexually abused other children, but denied that he ever had a conversation with his wife about the sexual abuse of his wife's cousins. The defendant specifically denied touching either J.W. or J.A. (the cousins) while they were sleeping. All of this testimony was admitted without objection.
Before J.W. testified for the State in its case on rebuttal, defense counsel made the following objection:
 "MR. POSEY: Defendant objects to the testimony of J.W. regarding all unindicted acts of sexual misconduct involving someone other than the alleged victim in the indictment. That testimony being alleged acts that occurred between the defendant and J.W. Said testimony is prejudicial to the defendant and its prejudicial effect outweighs any probative value.
 "Second objection to the testimony of J.W. is that the testimony was used to impeach testimony of a prior witness regarding a collateral matter, that said testimony was prejudicial and its prejudicial effect outweighed its probative value."
The record does not reflect a ruling by the trial judge on this objection. Defense counsel again objected immediately before J.W. testified to the conduct of the defendant: "I place an objection at this time. This has nothing to do with the case at bar. It has nothing to do with the present time and I object. Irrelevant." The trial judge overruled this objection. This objection should have been sustained.
The testimony of J.W. was not admissible to impeach any prior witness. Her testimony was not cumulative of testimony already before the jury. The testimony adduced from the defendant and his wife was in the nature of hearsay reports of what they had heard. On its case in rebuttal, the State was attempting to prove that what they had heard was true. This was not permissible.
The testimony of J.W. constituted evidence of a collateral offense for which the defendant had not been indicted. The State has never argued, either at trial or on appeal, that this testimony was admissible under one of the exceptions to the exclusionary rule prohibiting this type of evidence.
Under Anonymous v. State, 507 So.2d 972, 975 (Ala. 1987), the identity of the defendant was not in issue:
 "The identity of the person who actually committed the acts with which the defendant was charged was not at issue. The defendant did not argue that 'someone *Page 344 
else committed the acts with which he was charged'; instead, he merely denied that the acts ever occurred. Therefore, because there was no 'real and open' issue concerning identity, the collateral acts could not be admissible as going toward such an issue."
See also Staten v. State, 547 So.2d 607 (Ala. 1989).
In this case, there was also no "real and open issue" of intent. The victim testified that when she awoke the defendant was touching her private parts under her panties. "Even when the crime charged is one requiring specific intent, the evidence still may not be admitted where competent evidence links the defendant with the crime charged and the jury can infer the requisite intent." Gamble James, Perspectives onthe Evidence Law of Alabama: A Decade of Evolution, 1977-1987, 40 Ala.L.Rev. 95, 134 (1988) (citing Ex parte Cofer,440 So.2d 1121, 1124 (Ala. 1983)). "Evidence of prior bad acts of a criminal defendant is presumptively prejudicial to the defendant. It interjects a collateral issue into the case which may divert the minds of the jury from the main issue. . . . Therefore, the admission of such evidence constitutes reversible error." Cofer, 440 So.2d at 1124. Accord, Anonymous,507 So.2d at 974.
 "In summary, under the new methodology of the Alabama Supreme Court, evidence of other crimes or bad acts committed by the defendant is presumptively prejudicial or prima facie inadmissible to prove the defendant's intent or identity. To be admissible, such evidence 'must be both relevant and material,' or the defendant's intent or the identity of the perpetrator must be a real issue. There is no need for such evidence to prove intent when the defendant is not charged with a crime requiring specific intent. Even when the crime charged is one requiring specific intent, the evidence still may not be admitted where competent evidence links the defendant with the crime charged and the jury can infer the requisite intent."
Gamble James, 40 Ala.L.Rev. at 133-34 (footnotes omitted).
Additionally, under the circumstances of this case, we hold that the evidence that the defendant sexually abused a child 8 years before the subject charge "is far too remote to satisfy the requisite test of relevancy." Ex parte Tomlin,548 So.2d 1341, 1343 (Ala. 1989) ("Evidence that the defendant committed two drug-related offenses more than 10 years before the subject charge is far too remote to satisfy the requisite test of relevancy."). This Court has previously warned against the highly prejudicial impact of other offense evidence in prosecutions involving sex offenses. See Jenkins v. State,472 So.2d 1128, 1129-30 (Ala.Cr.App. 1985).
The State argues, not that this evidence was admissible, but that the defendant failed to preserve this issue for review by proper objection. Defense counsel did fail to make a number of objections. He thereby permitted the admission of highly prejudicial evidence which should not have been admitted over proper and timely objection. Compare Johnson v. State, 260 Ala. 276,280, 69 So.2d 854, 857 (1954) ("Where a witness testifies as to the general reputation or character of the defendant, the knowledge of the witness as to such reputation or character may be tested on cross-examination by asking him if he has not heard of specific acts of bad conduct on the part of the accused. But the witness may not be interrogated as to the fact of such particular acts."). However, J.W.'s testimony as to the fact that the defendant abused her is not cumulative of the prior testimony of the defendant and his wife that they had heard rumors or reports of the defendant's abuse. We cannot consider the admission of J.W.'s testimony harmless error.
The judgment of the circuit court is reversed and this cause is remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All Judges concur. *Page 345