The appellant, Rodney Register, was charged by separate indictments with various sexual offenses involving his two minor step-daughters. The indictment in CC-92-742 concerned the victim S.W. and charged the appellant with one count of rape in the second degree, two counts of sodomy in the second degree (one countsof fellatio and one count of cunnilingus), and one count of sexual abuse in the second degree. In CC-92-743, the appellant was charged in a three-count indictment with first degree sexual abuse and first degree sodomy (one count of fellatio and one count of cunnilingus) involving his other stepdaughter, T.W. On motion of the State, the cases were consolidated for trial. The jury was unable to reach a verdict on the rape charge, but found the appellant guilty of all the other charges. The appellant was sentenced as a habitual offender to imprisonment for life without possibility of parole on each of the two convictions for first degree sodomy; to life imprisonment on the convictions for first degree sexual abuse and on each of the two convictions for second degree sodomy; and to one year in the county jail on the conviction for second degree sexual abuse, with all the sentences to run concurrently. Three issues are raised in this appeal.
 I
The appellant maintains that the trial court erred in permitting the State, in his trial for his charged sexual misconduct involving his stepdaughters (S.W. and T.W.), to introduce evidence of his alleged prior sexual misconduct involving his natural daughter, L.R.
The mother of S.W. and T.W. married the appellant in March 1990. S.W. testified that she was twelve years old at the time and that the appellant began sexually molesting her "[n]ot too long after [her mother and the appellant] were married." R. 16. When asked for a more specific time reference, she replied, "A few months. I am not sure." R. 17. T.W. testified that she was ten years old at the time of her mother's marriage to the appellant and that the appellant began abusing her"[a] week" after the marriage. R. 162. Both victims testified in essence that the abuse began by the appellant's asking them to give him back rubs or massages; that he then began rubbing their backs and shoulders; that this progressed to his touching *Page 5 
their breasts and pubic areas and requiring them to manually stimulate him; and that he later made them engage in oral sex, both cunnilingus and fellatio. S.W. also testified that the appellant raped her in September 1991 when her mother was out of town visiting her grandfather, who was ill.
Over the appellant's objection, the State was allowed to introduce, as part of its case-in-chief, the testimony of L.R., the appellant's daughter from a previous marriage. L.R. testified that she came to live with the appellant at the age of six. When she was "about ten or eleven," the appellant began to have her massage him and also began to massage her. R. 228-30. L.R. stated that "during th[is] same time period," she was required to manually stimulate the appellant and that he began to touch her breasts and pubic area. R. 230-31. She also testified that the appellant performed cunnilingus upon her, but that she could not remember how old she was when this occurred. R. 232.
L.R. stated that she "went to detention more than once" for "[r]unning away and stealing." R. 233-34. One of the times that she was in detention, she reported that she had been abused by the appellant. According to L.R., there was a hearing on the matter wherein she "told them nothing happened" because she "was scared" and "wanted to get out of detention." R. 236.
When she was sixteen, L.R. was again living with the appellant. She testified that on one occasion "[h]e started massaging [her] back and then [she] got up and told him that [she] had something else to do. He asked [her] if [she] wanted him and [she] told him no." R. 237. On this occasion, L.R. "just got up and left and went to a friend's house. A few months later [she] moved out [of the appellant's house]." R. 238. She stated that nothing "else ever occur[red] between [her] and [her] dad." R. 238. L.R. was twenty-years-old at the time of the appellant's trial (September 1992).
The appellant testified in his own defense and denied the occurrence of both the charged acts and the collateral acts allegedly committed upon L.R.
"On the trial of a person for the alleged commission of a particular crime, evidence of his doing another act, which itself is a crime, is not admissible if the only probative function . . . is to show his bad character, inclination or propensity to commit the type of crime for which he is being tried." Ex parte Tucker, 474 So.2d 134, 135 (Ala. 1985). "This is a general exclusionary rule which prevents the introduction of prior criminal acts for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question." C. Gamble, McElroy's Alabama Evidence, § 69.01(1) (4th ed. 1991). "The underlying rationale for this rule is that the prejudicial effect of the prior bad acts far outweighs any probative value gained from their use." Aaron v. State,596 So.2d 29, 30 (Ala.Cr.App. 1991). Nevertheless, it well established that "certain 'other purpose' exceptions to this rule of exclusion exist, such as the accused's motive, intent, identity, or common plan, design, scheme, or system, in regard to all of which evidence [of collateral offenses] may be introduced provided there is a real and open issue as to one ormore of those 'other purposes.' " Bowden v. State,538 So.2d 1226, 1227 (Ala. 1988) (emphasis added). See generallyMcElroy's, § 69.01.
In the present case, the only "real and open issue" was whether the charged crimes in fact occurred — the victims testified that the appellant had molested them; the appellant testified that the acts had never occurred. See Gillespie v.State, 549 So.2d 640, 646 (Ala.Cr.App. 1989). Under these circumstances, identity was not at issue. See Anonymous v.State, 507 So.2d 972, 975 (Ala. 1987); Reeves v. State,570 So.2d 724, 725-26 (Ala.Cr.App. 1990). Nor was there a "real and open issue" concerning the appellant's intent — neither rape nor sodomy are specific intent crimes, see Ala. Code 1975, §§13A-6-62, -63, and -64, and the intent necessary for sexual abuse "may be inferred by the jury from the act itself," Exparte Cofer, 440 So.2d 1121, 1124 (Ala. 1983). "The intent exception is simply not applicable in a case that requires no specific criminal intent as a prerequisite to conviction."Anonymous v. State, 507 So.2d at 975. *Page 6 
When the State called L.R., defense counsel made the following objection:
 "[I]t is my understanding that the State proposes to offer testimony from this witness as to other acts of some sort of sexual abuse or sexual misconduct with this individual that occurred some seven or eight years ago, and it is our position that this is highly prejudicial, not probative, and brings in extraneous matters of other offenses, not relevant to this case, not proper evidence to show any similar scheme, motive or intent, and we would object to the State offering L.R.'s testimony for those purposes."
R. 222. In replying to defense counsel's objection, the prosecutor stated:
 "L.R. will testify that the massages were the prelude to any sexual activity with her father, that it continued and escalated just as the testimony of the prior witness[es], and the State feels it is proper testimony of a plan and scheme and to show that [the appellant's] behavior has been consistent throughout."
R. 222-23. It is clear from the prosecutor's response that the evidence of the collateral offenses was being offered to show that the appellant had a specific modus operandi or method in which he perpetrated the sexual offenses. However, the plan, scheme, or design exception is an extension of the identity exception — where the charged crime and the collateral crime are committed in the same novel or peculiar manner, evidence of the collateral crime is admissible toidentify the defendant as the perpetrator of the charged crime. See generally Brewer v. State, 440 So.2d 1155, 1161-64
(Ala.Cr.App. 1983). As the Alabama Supreme Court has stated, "[t]he plan, scheme, or system exception . . . is essentiallycoextensive with the identity exception." Ex parte Darby,516 So.2d 786, 789 (Ala. 1987) (emphasis added). See also J. Colquit, Alabama Law of Evidence § 4.4(c) at 126 (1990) ("[t]he prosecution may produce evidence of other crimes when that evidence tends to prove an identity of method, or modus operandi, which an accused used to commit both the other crimes and the offense charged"); Schroeder, Evidentiary Use inCriminal Cases of Collateral Crimes and Acts: A Comparison ofthe Federal Rules and Alabama Law, 35 Ala.L.Rev. 241, 252-57 (1984) ("[t]he rationale behind th[e identity] exception is that a collateral crime or act may be so similar to the one that the defendant is charged with that evidence of such crime or act would help identify the defendant as the one who committed the crime"); 2 D. Louiselle C. Mueller, FederalEvidence § 140 at 269 (1985 rev.) (noting that " 'identity' can mean little more than the logical conclusion which flows from other crimes evidence advanced in proof of plan, design, scheme, or modus operandi"). Because identity was not at issue in this case, L.R.'s testimony was not admissible under the plan, scheme, or design exception. Hatcher v. State, [Ms. CR 91-703, September 30, 1992] 1992 WL 240978 (Ala.Cr.App. 1992).
Judge Montiel, in his concurring opinion, states that this Court has applied the "plan, scheme or design" exception to allow collateral crimes evidence when identity is not in issue. That statement appears to be true for the decisions inHarvey v. State, 579 So.2d 22, 26 (Ala.Cr.App. 1990), Colemanv. State, 491 So.2d 1086, 1087 (Ala.Cr.App. 1986), and Jones v.State, 580 So.2d 97-101 (Ala.Cr.App. 1991).
Coleman, however, was decided before the Alabama Supreme Court made it clear, in Anonymous, Bowden, and Ex parte Darby,516 So.2d 786, 788-89 (Ala. 1987), that "plan, scheme or design" evidence was admissible only when identity was at issue. Furthermore, the evidence was admissible in Jones under a special exception — not to prove identity — but to rebut the special defense of consent in a rape case. The fact that the Harvey decision, and doubtless others, were wrongly decided does not mean that this Court should embark on a course contrary to the one the Supreme Court has charted. Until that court expands the "plan, scheme or design" exception beyond the boundaries set out in Anonymous, Bowden, and Ex parte Darby, we are bound to follow the holdings of those cases.
The only exception under which L.R.'s testimony was admissible is the motive exception. See Bowden v. State, 538 So.2d at 1235; J.D.S. v. State, 587 So.2d 1249, 1254 *Page 7 
(Ala.Cr.App. 1991). In Bowden, the Alabama Supreme Court stated the following general rule:
 "[T]estimony offered for the purpose of showing motive is always admissible. ' "It is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense." ' "
Bowden, 538 So.2d at 1235 (emphasis in original) (citations omitted). The court then applied the general rule to the admissibility of evidence of the accused's collateral offenses against the same victim:
 "[W]here, as in these cases, a defendant is charged with [a sexual offense against] his minor daughter, evidence establishing that he had [committed other sexual offenses against] her prior to or subsequent to the offense for which he is charged, is admissible to prove his motive in committing the charged offense. Such evidence tends to establish the inducement (i.e., unnatural sexual passion for his child) that led him to rape or molest her."
Id. (emphasis in original). Next, the court offered the following caveat regarding the admissibility of evidence of collateral acts with a different victim:
 "However, where the defendant is not charged with the offense of incest, as neither Bowden nor Watson was, it becomes questionable whether evidence establishing that the accused raped and/or sexually abused one or more of his other children is admissible to prove his motive in raping the victim, also his child."
Id. (emphasis in original). Following that caveat, the court reviewed a series of Alabama decisions (one of which had relied on a California incest case) that "appear[ed] to be [in] conflict." Bowden, 538 So.2d at 1237. The court then held:
 "We now hold as follows: It may well be, when the third party against whom the defendant is claimed to have committed a collateral sexual offense is the defendant's child, that collateral offense evidence is more relevant in proving the material 'other purpose(s)' for which it is offered in a sex crime prosecution than would be evidence of other third party offenses. This of course depends upon (1) the offense(s) charged; (2) the circumstances surrounding the offense(s) charged and the collateral offense(s); (3) the other collateral evidence offered at trial, and (4) the other purpose(s) for which it is offered. Thus, as previously noted, the analysis must be case by case."
Bowden, 538 So.2d at 1237-38.
Based on the foregoing discussion, this court has interpreted Bowden to mean (1) that the State may introduce evidence of the accused's collateral sexual offenses against the victim named in the indictment because evidence of those collateral offenses tends to show motive and is always admissible, see Inmon v. State, 585 So.2d 261, 264 (Ala.Cr.App. 1991), and (2) that when the accused has been charged with incest, the State may introduce evidence of the accused's collateral sexual offenses against his other children because evidence of those collateral offenses also tends to show motive and is admissible, see J.D.S. v. State, 587 So.2d at 1253-54.
Because the Bowden court suggested a four-factor analysis for the admissibility of evidence of collateral offenses against victims not named in the indictment and because the court stated that the analysis "must be case by case," id. at 1237-38, we do not believe the court meant to make the fact that the accused either has or has not been charged with incest the sole determining factor in a case such as the one now before us. The supreme court did not hold that unless the accused was charged with incest, evidence of collateral offenses against his other children was inadmissible to show motive. It merely said that the admissibility of such evidence is "questionable" in cases where the defendant had not been charged with incest. Id. at 1235. We think the supreme court meant that, unlike other evidence tending to show motive — which is always admissible — the admissibility of this particular kind of collateral offense evidence may not be determined simply by pigeonholing it under the category of "motive" evidence; instead the question of its admissibility must be resolved by analyzing that evidence in light of the four *Page 8 
factors suggested in Bowden. Id. at 1237-38.
Applying that four-factor analysis to this case, we note, first, that the appellant was not charged with incest. He was indicted for rape, sodomy, and sexual abuse of one stepdaughter (S.W.), and for sodomy and sexual abuse of the other stepdaughter (T.W.).
Second, the circumstances surrounding the charged offenses and the collateral offenses were very similar. The appellant began by rubbing or massaging the three young girls' backs, progressed to touching their breasts and pubic areas, and eventually made all three engage in sodomy with him. His two stepdaughters testified that the sodomy included both cunnilingus and fellatio, while his natural daughter testified that the sodomy consisted of cunnilingus only. Only one of the three girls, S.W., testified that the appellant raped her. We have considered the fact that the appellant's alleged acts of sodomy were not the same with all three girls, but we do not find that fact significant. InJ.D.S. v. State, supra, we noted:
 "[W]hile it is a consideration, it is not significant . . . that the appellant allegedly performed fellatio on his stepson but had his daughter perform fellatio on him. Fellatio constitutes deviate sexual intercourse which is defined in § 13A-6-60(2) and is condemned as sodomy. § 13A-6-63 and § 13A-6-64. Neither of the sodomy statutes makes any reference to or distinction between the different roles of the participants in the act of deviant sexual intercourse."
J.D.S., 587 So.2d at 1255. We have also considered the fact that only one of the appellant's children alleged that the appellant raped her. The same situation was present in J.D.S., supra. Here, as in J.D.S., we do not find that L.R.'s testimony was less material because it did not precisely match with that of her stepsisters.
Third, we have considered the overall strength of the evidence offered at trial.[1] The testimony of both S.W. and T.W. was suspect. Both of the appellant's stepdaughters were impeached on cross-examination. As we observed in J.D.S., 587 So.2d at 1255, "there was a genuine need to corroborate and substantiate the testimony of the victim[s]. See [Ex parte]Smith, [581 So.2d 531 (Ala. 1991)] ('reasonably necessary to the government's case')."
The fourth Bowden factor requires a consideration of "the other purpose(s) for which [the testimony of L.R. was] offered." As we have already pointed out, L.R.'s testimony was incorrectly offered to show the appellant's "plan and scheme," when in fact the only basis on which it was admissible was to illustrate the appellant's motive. The fact that the prosecutor gave an erroneous reason in arguing for the admissibility of the evidence is unimportant when there is, in fact, a valid reason for admissibility. See J.D.S. v. State, 587 So.2d at 1251 (prosecutor erroneously claimed that collateral offense testimony made the accused's "common scheme or plan . . . apparent").
L.R.'s testimony that the appellant sexually abused and sodomized her demonstrated his motive for committing the same acts against S.W. and T.W. — the appellant's "unnatural sexual passion for his [female] child[ren]," who were young, vulnerable, and subject to his authority. See Bowden v. State, 538 So.2d at 1235.
As best we can determine from L.R.'s testimony, all the alleged sexual offenses committed against her by the appellant occurred in 1982 to 1983, some seven to nine years before the charged offenses. Although L.R. testified to conduct that occurred when she was sixteen (which would appear to be two to three years prior to the charged offenses), no sexual offense occurred at that time.
Seven-to nine-year-old offenses are not too remote to be admissible. The Alabama *Page 9 
Supreme Court has held prior acts too remote only when the acts were ten years old, Ex parte Cofer, 440 So.2d 1121, 1124
(Ala. 1983), or older, Ex parte Tomlin, 548 So.2d 1341, 1343
(Ala. 1989). This court has upheld the admission of collateral acts seven to nine years old against arguments of remoteness.See, e.g., J.D.S. v. State, 587 So.2d at 1251 (nine years);Perkins v. State, 580 So.2d 4, 8 (Ala.Cr.App. 1990) (seven years).[2]
In McClellan v. State, 571 So.2d 341 (Ala.Cr.App.), cert. quashed, 571 So.2d 345 (Ala. 1990), we held that evidence of a collateral sexual offense was not admissible under any of the exceptions to the exclusionary rule prohibiting other crimes evidence. 571 So.2d at 343-44. Additionally, we determined that the eight-year-old collateral offense was " 'too remote to satisfy the requisite test of relevancy.' " McClellan, 571 So.2d at 344. We now expressly disavow the latter holding inMcClellan. The admission of evidence of any collateral offense occurring less than ten years prior to the charged offense is within the discretion of the trial court.
For these reasons, we conclude that the trial court did not commit error in allowing the state to introduce evidence of the appellant's prior sexual misconduct involving his natural daughter in his trial for various sexual offenses involving his stepdaughters.
 II
Theresa Boone, a psychiatric social worker, testified that she had interviewed S.W. and T.W. several times in the year prior to the trial. She was permitted to testify, over the appellant's hearsay objection, to the details of the complaints related to her by S.W. and T.W.
 " 'It is a well established rule in Alabama that [in cases involving sexual offenses,] testimony concerning the prosecutrix' complaint must be confined to the fact of the complaint.' Lawson v. State, 377 So.2d 1115, 1118
(Ala.Cr.App.), cert. denied, 377 So.2d 1121 (Ala. 1979).
 " 'When [as in the case at bar,] the complaint does not constitute part of the res gestae but is received in corroboration of the prosecutrix's testimony, the general rule is that the details or particulars cannot be introduced, in the first instance by the state. Huggins v. State, 271 Ala. 428, 432, 123 So.2d 911 [1960], and authorities there cited.
 " 'There are two cases, at least, where details of the complaint may be proved: (1) They may be elicited, on cross-examination, by the defendant; and where this is done only in part, the state on rebutting examination, may then proceed to prove the whole complaint. (2) Where testimony of prosecutrix is sought to be impeached, by attempting to discredit her story, it is permissible, by way of corroboration, for the state to prove such details. Barnett v. State, 83 Ala. 40, 44, 3 So. 612 [1887].'
 Cox v. State, 280 Ala. 318, 323-24, 193 So.2d 759, 765 (1967). Accord, Aaron v. State, 273 Ala. 337, 345-46, 139 So.2d 309, 317 (1961), cert. denied, Aaron v. Alabama, 371 U.S. 846, 83 S.Ct. 81, 9 L.Ed.2d 82 (1962). See also C. Gamble, McElroy's Alabama Evidence § 178.01 ([4th] ed. 19[91])."
McLemore v. State, 562 So.2d 639, 648 (Ala.Cr.App. 1989). Accord Lee v. State, 565 So.2d 1153, 1154 (Ala. 1989).
S.W. testified on direct examination that she had told her mother of the defendant's acts in September 1991. Very soon thereafter, the victims, their mother, and their brother, went to a shelter for abused spouses. T.W. testified that she told her mother of the defendant's acts shortly after they arrived at the shelter. During cross-examination, defense counsel asked both S.W. and T.W. several questions implying that the victims had fabricated the allegations against the appellant. S.W. acknowledged that she *Page 10 
was often in trouble for lying and for sneaking out, although she refused to admit that she was about to be grounded when she told her mother of the appellant's alleged acts. T.W. acknowledged on cross-examination that she had lied in the past to help S.W. stay out of trouble with their mother and the appellant. Both victims acknowledged that they had answered some questions differently at a prior trial.[3] Defense counsel also rigorously cross-examined both victims concerning the details of the alleged rape of S.W.
Where "the victim [of a sexual offense] 'has been subjected to cross-examination calculated to reflect upon her credibility as a witness,' the details of her complaint are admissible for the purpose of corroborating her testimony on direct examination." Inmon v. State, 585 So.2d 261, 265-66
(Ala.Cr.App. 1991) (quoting Lee v. State, 565 So.2d at 1154). See also Strickland v. State, 550 So.2d 1042, 1052-53
(Ala.Cr.App. 1988), affirmed, 550 So.2d 1054 (Ala. 1989). Ms. Boone's testimony regarding the details of the complaints made by the victims was admissible "in rebuttal of the inference that the testimony [of the victims] was manufactured."Yarbrough v. State, 105 Ala. 43, 54, 16 So. 758, 760 (1894).
 III
The trial court did not err in denying the appellant's motion for mistrial made after an unresponsive answer by the mother of S.W. and T.W.
During direct examination of the victim's mother, the prosecutor asked several questions concerning what the appellant had said to her on the subject of sex. In answering one of these questions, the mother volunteered the information that the appellant had "begged and begged for me to have sex with him and another woman, and I just wouldn't do it." R. 190. Defense counsel immediately objected to the answer as irrelevant and asked that it be stricken from the record. The following then occurred:
 "THE COURT: Sustained. Ladies and gentlemen, I instruct you to disregard the last remark.
 "Q. [by the prosecutor:] Now, C., did Rodney ever tell you what he —
 "MR. HUGHES [defense counsel]: Your Honor, if it please the Court — I am sorry, I didn't mean to interrupt you. Given what she said, I would ask for a mistrial. I don't think just a curative instruction would be sufficient.
 "THE COURT: Ladies and gentlemen, would any of you have any difficulty disregarding the remark to which I made reference a minute ago?
"(No response.)
"THE COURT: Thank you. Deny your motion." R. 191.
It is clear that " '[a] motion for mistrial should not be granted where the prejudicial qualities of the comment can be eradicated by action of the trial court.' " Henry v. State,468 So.2d 896, 901 (Ala.Cr.App. 1984), cert. denied, 468 So.2d 902
(Ala. 1985) (quoting Nix v. State, 370 So.2d 1115, 1117
(Ala.Cr.App.), cert. denied, 370 So.2d 1119 (Ala. 1979)). Although there are some comments that are so prejudicial that eradication is not possible, see Stain v. State, 273 Ala. 262,267, 138 So.2d 703, 707 (1961) (in a death case, prejudice caused by unresponsive testimony by a police officer concerning defendant's shooting of two men in another state was ineradicable); Hines v. State, 384 So.2d 1171, 1182
(Ala.Cr.App.), cert. denied 384 So.2d 1184 (Ala. 1980) (in a rape case where the defense was mental and physical incapacity, prejudice caused by unresponsive testimony by a State rebuttal witness regarding the defendant's sexual capacity was ineradicable), the mother's volunteered comment in this case does not fall within that category. We find that her comment, while clearly uncalled for, is comparable to comments that we have held to be eradicable. See, e.g., Garnett v. State,555 So.2d 1153, 1155 (Ala.Cr.App. 1989) ("any prejudice arising from [prosecutor's] question [indicating that murder defendant had been arrested for beating *Page 11 
his wife] . . . was both capable of eradication and was eradicated by the trial court's prompt action" in instructing the jurors to disregard the question and in polling the jurors to ascertain that they could disregard the question);Nathan v. State, 436 So.2d 19, 20 (Ala.Cr.App. 1983) (in child abuse case, any prejudice arising from comment by prosecutor that another of defendant's children had died was eradicated by trial judge's instruction to jury to disregard); Floyd v.State, 412 So.2d 826, 830 (Ala.Cr.App. 1981) ("the trial court's action in immediately instructing the jury to disregard the prosecution's vague reference to another unspecified crime cured any potential error prejudicing the appellant's case");Garner v. State, 53 Ala. App. 209, 211, 298 So.2d 630, 631, cert. denied, 292 Ala. 721, 298 So.2d 633 (1974) (any prejudicial effect flowing from the prosecutor's question "Did they ever look at the mug shot?" was removed by the trial court's prompt action in instructing the jury to disregard). Where, as in this case, improper remarks are capable of eradication and the "trial court acts promptly to impress upon the jury that improper [remarks] are to be disregarded by them in their deliberations, the prejudicial effects of such remarks are removed." Woods v. State, 460 So.2d 291, 295 (Ala.Cr.App. 1984).
In this case, the trial court promptly instructed the jury to disregard the comment, then asked if there was any member of the jury who could not follow that instruction. Consequently, we find no abuse of discretion in the trial court's denial of the motion for mistrial. See Shadle v. State,280 Ala. 379, 384, 194 So.2d 538, 542 (1967); Garnett v. State, 555 So.2d at 1155; Wadsworth v. State, 439 So.2d 790, 792
(Ala.Cr.App. 1983), cert. denied, 466 U.S. 930, 104 S.Ct. 1716,80 L.Ed.2d 188 (1984).
The judgment of the circuit court is affirmed.
AFFIRMED.
TAYLOR, PATTERSON and McMILLAN, JJ., concur.
MONTIEL, J., concurs specially with opinion.
[1] Although the Bowden court suggested that "the other collateral
evidence offered at trial" should be considered as the third factor, we believe that the court must have intended for "the strength of the evidence of the charged offense" to be assessed. Because the second factor requires an evaluation of the "collateral evidence," that is, the proof relating to the uncharged offense(s), the Bowden court must have intended that the third factor take into account the overall strength of the State's case. Bowden, 538 So.2d at 1237-38.
[2] Compare Proposed Ala.R.Evid. 609 (Ala. Law Institute 1993) allowing impeachment by evidence of a conviction of a crime ten years' old. "As a general principle, this rule recognizes that convictions over ten (10) years old are too remote to possess continued relevancy as to a witness' current credibility. In rare circumstances, however, the trial judge may permit impeachment by a conviction more than ten (10) years old. . . ." Advisory Committee's Notes at 179.
[3] These cases were tried twice prior to the instant trial. Both prior trials ended in a mistrial when the juries were unable to reach a verdict.