26 So.3d 491 (2009)
Trenton J. McCLAIN
v.
STATE of Alabama.
CR-07-1585.
Court of Criminal Appeals of Alabama.
June 26, 2009.
*492 James Perry Newton, Butler, for appellant.
Troy King, atty. gen., and Jean A. Therkelsen, asst. atty. gen., for appellee.
KELLUM, Judge.
The appellant, Trenton J. McClain, was convicted of murder, a violation of § 13A-6-2, Ala.Code 1975. The circuit court sentenced McClain to 50 years' imprisonment. The court ordered McClain to pay $50 to the crime victims compensation fund and $11,976.56 in restitution.
The evidence presented at trial established the following pertinent facts. On the evening of September 1, 2006, Jamuary Whittaker rode with his friend Robert Williams to the Chicken Coop, a club in Gainestown. Once they arrived at the Chicken Coop, Whittaker and Williams got out of the vehicle. Williams testified that Whittaker immediately began talking to two friends, one of whom was McClain's cousin, Charlie McGaster. According to Williams, the only thing Whittaker had in his hand was a beer. Williams testified that McClain went up to McGaster and asked him if he had some "heat," meaning a gun, and McGaster said, "No." (R. 84.) McClain then walked away. Williams testified that McClain returned a few minutes later, shot Whittaker with a shotgun, and immediately ran away. According to Williams, Whittaker said nothing to McClain that evening and Whittaker had not exchanged cross words with McClain in the weeks leading up to the shooting. Williams testified that neither he nor Whittaker had a gun on his person that evening.
Derrick Hunt, who was at the Chicken Coop on the night of September 1, 2006, testified that he was standing behind Williams's vehicle when he heard a shot and saw McClain holding a single-barrel shotgun. According to Hunt, after McClain shot Whittaker he said to Whittaker "swing on me now, laugh at me now," then ran off into some nearby bushes. (R. 112.) Hunt testified that he did not see anyone else that evening, other than McClain, who had a gun in his possession.
Antonio Jemel Jones, Whittaker's cousin, testified that he also saw McClain shoot Whittaker. According to Jones, several weeks before the shooting, Whittaker and McClain were in a fight. Jones testified that he and Whittaker subsequently ran into McClain at a grocery store where Whittaker and McClain shook hands. Jones testified that he believed after that exchange that any disagreement between Whittaker and McClain had been resolved. Jones stated that on the evening of September 1, 2006, he overheard McClain tell McGaster "bitch going to die tonight." (R. 192.) Jones testified that he had never seen Whittaker with a gun.
Marcus Belton, over the objection of defense counsel, testified that he had been the victim of a nightclub shooting in June 2002. Belton testified that the nightclub he was at when he was shot was also *493 located in Gainestown and was owned by the same man who owned the Chicken Coop. According to Belton, McClain shot him in the collar bone without provocation, using a handgun. On cross-examination, Belton testified that criminal charges were never brought against McClain for the shooting.
McGaster, McClain's first cousin, testified that he was present when the shooting occurred and that he saw Whittaker fall to the ground after he was shot. McGaster testified that after Whittaker was shot he observed someone remove a gun and marijuana from Whittaker's pants pockets. McGaster testified that Whittaker had previously shot a gun into a car in which he and McClain were riding.
The jury found McClain guilty of murder, as charged in the indictment. This appeal followed.

I.
McClain contends that the circuit court erred in allowing the State to introduce evidence of collateral acts of misconduct, in violation of Rule 404(b), Ala. R. Evid. Specifically, McClain argues that Belton's testimony regarding an altercation between him and McClain did not meet any of the allowable exclusions under Rule 404(b).
"The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court's determination on that question will not be reversed except upon a clear showing of abuse of discretion." Ex parte Loggins, 771 So.2d 1093, 1103 (Ala.2000). This is equally true with regard to the admission of collateral-acts evidence. See Davis v. State, 740 So.2d 1115, 1130 (Ala.Crim.App. 1998).
Rule 404(b), Ala. R. Evid., provides:
"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."
At trial, the State argued that it planned to introduce the evidence to show, among other things, motive, intent, identity, or a common plan, design, or scheme. The State proposed that the evidence would show, and, indeed, the evidence did show, that in June 2002 McClain shot Belton in the neck without provocation while both were at a nightclub owned by the same man who owned the Chicken Coop.
"Under the general exclusionary rule, evidence of collateral offenses of the accused is inadmissible to prove guilt on the now charged offense. Anonymous v. State, 507 So.2d 972, 973 (Ala.1987). However, evidence of collateral offenses may be admissible under certain exceptions to the exclusionary rule or for `other purposes' than to prove the accused's guilt. These exceptions or other purposes include motive, intent, identity, or common plan, design, or scheme. Bowden v. State, 538 So.2d 1226, 1227 (Ala. 1988); Atkisson v. State, [640 So.2d 33] (Ala.Crim.App.1993); Register v. State, [640 So.2d 3] (Ala.Crim.App.1993)."
Williamson v. State, 629 So.2d 777, 780 (Ala.Crim.App.1993). "[T]he plan, scheme, or design exception is an extension of the identity exceptionwhere the charged *494 crime and the collateral crime are committed in the same novel or peculiar manner, evidence of the collateral crime is admissible to identify the defendant as the perpetrator of the charged crime." Register v. State, 640 So.2d 3, 6 (Ala.Crim.App.1993). See also Ex parte Darby, 516 So.2d 786, 789 (Ala.1987)(the common scheme or plan exception has been held to be "coextensive with the identity exception"). The circumstances of the charged crime and the collateral crime must "exhibit such a great degree of similarity that anyone viewing the two offenses would naturally assume them to have been committed by the same person." Brewer v. State, 440 So.2d 1155, 1161 (Ala.Crim.App.1983).
In the instant case, the earlier shooting of Belton, like the shooting of Whittaker, occurred at similar nightclubs owned by the same man. The victims each sustained similar injuriesBelton sustained an injury to his collarbone and Whittaker sustained an injury to his neck. Both Belton and Whittaker were attacked without provocation. The shooting of Belton and the shooting of Whittaker were sufficiently similar to fall under the plan, scheme, or design exception. Accordingly, we conclude that the trial court did not err in allowing the State to introduce testimony of a collateral bad act.

II.
McClain further contends that the circuit court erred in refusing to allow McGaster to testify regarding statements Whittaker made to him the night of the shooting in which Whittaker purportedly threatened McClain. Specifically, McClain argues that the statements were not inadmissible hearsay because, he says, they were not being offered to prove the truth of the matter thereinthat Whittaker had threatened McClainbut were being offered to prove Whittaker's state of mind an exception to the hearsay rule.
The record indicates that the following occurred during McGaster's testimony:
"Q. [DEFENSE COUNSEL:] Was there ever any discussion about Trenton McClain between [you and Whittaker]?
"A. [McGaster:] Yes, sir.
"Q. Who brought up the subject of Trenton McClain?
"A. [Whittaker].
"[PROSECUTOR]: Judge, I object to what he said as being hearsay.
"[THE COURT]: All right.
"....
"[DEFENSE COUNSEL]: Judge, I think it's material and relevant to this court case. It's all about motive and intent. I think this is crucial testimony that's relevant and material to the issues in this case.
"[PROSECUTOR]: Materiality and relevancy do not make it admissible.
"THE COURT: It is hearsay. Sustained.
"Q. Did anyone ever threaten Trenton that night?
"[PROSECUTOR]: Judge, I am going to object, it calls for hearsay.
"THE COURT: Sustained."
(R. 272-73.)
"The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court's determination on that question will not be reversed except upon a clear showing of abuse of discretion." Ex parte Loggins, 771 So.2d 1093, 1103 (Ala.2000).
Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), Ala. R. Evid. A statement that constitutes hearsay may still be admissible under one of the exceptions *495 to the hearsay rule. One such exception is the "state-of-mind" exception, as set out in Rule 803(3), Ala. R. Evid. Rule 803(3), Ala. R. Evid., provides that a statement of the declarant's then existing state of mind, emotion, sensation, or physical condition is admissible as relevant evidence. See Charles W. Gamble, McElroy's Alabama Evidence, 261.03(2) and (5) (5th ed. 1996).
Despite McClain's claim to the contrary, it is clear from the record that the truth of the matter asserted in the statement, i.e., that Whittaker threatened to harm McClain on the evening of September 1, 2006, is exactly what McClain was offering the statement to prove. McGaster's testimony was classic hearsayhe testified to a threatening statement made by Whittaker regarding McClain, and that statement was offered by McClain to prove the truth of its contents, i.e., that Whittaker threatened McClain. Furthermore, McGaster's testimony did not fall within the Rule 803(3) exception to the hearsay rule. Accordingly, we cannot say that the circuit court abused its discretion not allowing McGaster's hearsay testimony.

III.
Finally, McClain contends that the circuit court erred by failing to instruct the jury on lesser-included offenses because, he says, the evidence at trial supported a charge on the lesser-included offense of manslaughter.
"Lesser included offense instructions should be given when there is a `reasonable theory from the evidence' supporting such an instruction." Dobyne v. State, 672 So.2d 1319, 1345 (Ala.Crim.App.1994)(quoting Jenkins v. State, 627 So.2d 1034, 1049 (Ala.Crim.App. 1992)). A trial court may refuse to charge on a lesser-included offense only when: (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense; or (2) the charge would tend to mislead or confuse the jury. Turner v. State, 708 So.2d 232, 234 (Ala.Crim.App.1997)(citing Holladay v. State, 549 So.2d 122 (Ala. Crim.App.1988)).
A person commits the crime of manslaughter if he "recklessly causes the death of another person" or if he "causes the death [of another person] due to a sudden heat of passion caused by provocation recognized by law." § 13A-6-3, Ala. Code 1975. In the instant case, the evidence indicated that McClain shot Whittaker without provocation. Although McGaster testified that Whittaker had previously shot a gun into vehicle in which McClain was riding and that a gun was removed from Whittaker's pocket on the night of the murder, there was no evidence indicating that Whittaker had threatened McClain or provoked him in anyway immediately before the shooting on September 1, 2006. There is no evidence to support an instruction on reckless manslaughter or heat-of-passion manslaughter. Therefore, the circuit court did not err in not instructing the jury on the lesser-included offense of reckless manslaughter.
Based on the foregoing, the circuit court's judgment is affirmed.
AFFIRMED.
WISE, P.J., and MAIN, J., concur.
WINDOM, J., concurs in the result.
WELCH, J., dissents, with opinion.
WELCH, Judge, dissenting.
In Part I of its opinion, the majority holds that the trial court properly admitted evidence of a collateral crime by Trenton J. McClain because the prior crime was "sufficiently similar" to the present crime to fall under the identity exception *496 or the common plan, scheme, or design exception to the exclusionary rule. I disagree.
The facts of this case are simple. On the evening of September 1, 2006, Jamuary Whittaker, Robert Williams, Brianna Washington, Derrick Hunt, and Charlie McGaster were in the parking lot of a club in Gainestown called the Chicken Coop when McClain approached and shot Whittaker in the neck with a shotgun, killing him. Eyewitnesses to the crime testified at trial that they saw McClain shoot Whittaker; that Whittaker and McClain had not spoken or had a disagreement that evening; and that Whittaker was unarmed at the time of the shooting. Another eyewitness, however, testified that, after the shooting, a friend of Whittaker's removed a gun from Whittaker's pocket. Testimony indicated that McClain and Whittaker had had a disagreement several weeks earlier, but that disagreement was believed by witnesses to have been resolved before the September 1 shooting. Shortly after the shooting, McClain turned himself into police and was charged with murder.
Before trial, the State gave notice of its intent to introduce, under Rule 404(b), Ala. R. Evid., evidence that McClain had previously shot a man in 2002 named Marcus Belton at another club in Gainestown, owned by the same man who owned the Chicken Coop. McClain filed a motion in limine to prohibit introduction of this evidence, arguing that it was being offered solely to show McClain's bad character. In response, the prosecutor argued:
"Marcus Belton was a shooting that occurred at the Chicken Coop,[1] which is the location in Gainestown where this incident occurred. The allegation is that Mr. McClain shot Mr. Belton with a firearm at that same location where this case happened. Certainly, it is so similar in nature that we feel it would fall squarely within Rule 404(b). And although he wasn't convicted on it, as the Court is well aware Rule 404(b) doesn't require a conviction for that evidence to be offered."
(R. 9.) The trial court denied McClain's motion in limine. When the State called Belton to testify, McClain again objected, challenging the relevancy and materiality of the evidence. The prosecutor argued that he was offering the evidence to show motive, intent, identity, and a common plan, scheme, or design and that the prior shooting was similar to the present crime because it occurred at a club owned by the same owner as the Chicken Coop and the shot was fired at the "same location on the body." (R. 252.) McClain's counsel then argued that there were not enough similarities in the crimes to make evidence of the prior shooting admissible, to which the State replied: "It's like a sexual abuse case. He's got a history of violence involved at night clubs when drinking and involving firearms." (R. 252.)[2] The trial court overruled McClain's objection, and Belton testified that in June 2002, he was at a club owned by the same man who owned the Chicken Coop when McClain shot him in the collar-bone area with a handgun.
Rule 404(b), Ala. R. Evid., provides, in relevant part:
"Evidence of other crimes, wrongs, or acts is not admissible to prove the character *497 of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...."
In Nicks v. State, 521 So.2d 1018 (Ala. Crim.App.1987), aff'd, 521 So.2d 1035 (Ala. 1988), this Court explained:
"Under Alabama law, evidence of any offense other than that specifically charged is prima facie inadmissible. Allen v. State, 380 So.2d 313 (Ala.Cr.App. 1979), cert. denied, 380 So.2d 341 (Ala. 1980), cert. denied, 449 U.S. 842, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980). However, Alabama law provides for the admissibility of evidence of collateral crimes or acts as part of the prosecution's case-in-chief if the defendant's collateral misconduct is relevant to show his guilt other than by suggesting that he is more likely to be guilty because of his past misdeeds. Brewer v. State, [440 So.2d 1155 (Ala.Crim.App.1983)]. Numerous Alabama cases list the exceptions to the general exclusionary rule, or tests for relevancy, whereby evidence of collateral crimes or acts may be admitted. These exceptions include the following:
"`(1) Relevancy to prove physical capacity, skill, or means to commit the now-charged crime; (2) part of the res gestae or part of a continuous transaction; (3) relevancy to prove scienter or guilty knowledge; (4) relevancy to prove criminal intent; (5) relevancy to prove plan, design, scheme, or system; (6) relevancy to prove motive; (7) relevancy to prove identity; (8) relevancy to rebut special defenses; and (9) relevancy in various particular crimes.'
"Nelson v. State, 511 So.2d 225, 233 (Ala.Cr.App.1986)."
521 So.2d at 1025-26. "Evidence of collateral crimes is `presumptively prejudicial because it could cause the jury to infer that, because the defendant has committed crimes in the past, it is more likely that he committed the particular crime with which he is chargedthus, it draws the jurors' minds away from the main issue.'" Woodard v. State, 846 So.2d 1102, 1106 (Ala. Crim.App.2002), quoting Ex parte Drinkard, 777 So.2d 295, 296 (Ala.2000).
As the majority recognizes, the common plan, scheme, or design exception to the exclusionary rule "is essentially coextensive with the identity exception" and must be analyzed under the same standards.[3]Ex parte Darby, 516 So.2d 786, 789 (Ala. 1987). "[T]he plan, scheme, or design exception is an extension of the identity exceptionwhere the charged crime and the collateral crime are committed in the same novel or peculiar manner, evidence of the collateral crime is admissible to identify the defendant as the perpetrator of the charged crime." Register v. State, 640 So.2d 3, 6 (Ala.Crim.App.1993), aff'd, 680 So.2d 225 (Ala.1994). "`When extrinsic offense evidence is introduced to prove identity, the likeness of the offenses is the crucial consideration. The physical similarity must be such that it marks the offenses as the handiwork of the accused.'" Ex parte Baker, 780 So.2d 677, 680 (Ala. 2000), quoting United States v. Clemons, 32 F.3d 1504, 1508 (11th Cir.1994) (further citations omitted). "`[E]vidence of a prior crime is admissible only when the circumstances surrounding the prior crime and *498 those surrounding the presently charged crime "exhibit such a great degree of similarity that anyone viewing the two offenses would naturally assume them to have been committed by the same person."'" Irvin v. State, 940 So.2d 331, 347 (Ala.Crim.App. 2005), quoting Ex parte Arthur, 472 So.2d 665, 668 (Ala.1985), quoting in turn Brewer v. State, 440 So.2d 1155, 1161 (Ala.Crim. App.1983). "`Much more is demanded than the mere repeated commission of crimes of the same class, such as repeated... rapes [or shootings]. The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.'" Hurley v. State, 971 So.2d 78, 83 (Ala.Crim.App.2006), quoting 1 McCormick on Evidence § 190 at 801-03 (4th ed. 1992) (footnotes omitted).
I agree with the majority that Belton's shooting and Whittaker's shooting have some similarities: both occurred at clubs in Gainestown owned by the same man and both resulted in gunshot wounds to the same general area of the victims' bodies. However, as the Alabama Supreme Court noted in Ex parte Arthur, 472 So.2d at 668-69, factors "common to both [crimes]... cannot be taken out of context to stand alone for comparison .... [but] [t]he entire circumstances surrounding both [crimes] must be compared."
Both shootings occurred at clubs, but at different locations. The fact that both clubs were owned by the same man is not relevant in this context, in my view, because nothing in the record indicates that the ownership of the clubs in question had any bearing whatsoever on either shooting. In addition, although both gunshot wounds were in the same general area of the body on the victims, i.e., above the chest, they were not in the exact same locationWhittaker was shot in the neck; Belton was shot in the collar bone. Moreover, there are substantial differences between the two shootings. The Belton shooting involved a handgun, while the Whittaker shooting involved a shotgun. The Belton shooting occurred as Belton was walking out of the door of the club, while the Whittaker shooting occurred as Whittaker was standing in the parking lot, having yet to even enter the club. In addition, testimony indicated that the Belton shooting was preceded by a specific warning from one of McClain's friends to Belton that McClain was going to shoot Belton, while no such specific warning occurred with the Whittaker shooting. Finally, Belton survived his shooting, while Whittaker did not. Analyzing all the circumstances of these crimes, I do not believe that a reasonable person would naturally assume that both of these crimes were committed by the same person. The two shootings were not so unusual and distinctive and were not committed in such a novel and peculiar manner as to make the prior shooting admissible pursuant to the identity or common plan, scheme or design exceptions to the exclusionary rule.
Nor do I believe that the prior shooting was admissible to show McClain's motive or intent, as the prosecutor also argued at trial. My review of the record reveals nothing indicating any relation whatsoever between the Belton shooting and the Whittaker shooting that had a logical tendency to lead to any inference that McClain, because he had previously shot Belton in 2002, had the intent to kill Whittaker in 2006, or was somehow motivated to kill Whittaker. See, e.g., Hurley v. State, 971 So.2d 78 (Ala.Crim.App.2006), and Moore v. State, 878 So.2d 328 (Ala.Crim.App. 2003). Rather, I think the prosecutor's statement during trial fairly sums up the true purpose of this evidence: "He's got a history of violence involved at night clubs when drinking and involving firearms." (R. 252.) The evidence of the prior shooting did nothing more than show McClain's *499 bad character and history of violence, and this is not a proper purpose for admission of the evidence.
Because I do not believe that evidence of McClain's collateral crime was admissible under any of the exceptions in Rule 404(b), I must respectfully dissent.
NOTES
[1] The prosecutor later conceded that this statement was incorrect; the previous shooting occurred at a different club that was owned by the same person who owned the Chicken Coop.
[2] I note that there was no evidence presented indicating that McClain was actually drinking the night of the Whittaker shooting or the night of the Belton shooting.
[3] There is no question here that McClain's identity was at issue. McClain presented testimony from McGaster that McGaster did not see McClain in the vicinity at the time of the shooting. McClain's counsel also cross-examined some of the State's witnesses regarding the lighting at the time of the shooting and their ability or inability to see the shooter.