Appellant was indicted for the murder of Johnnie Lannette Moore by the Mobile County Grand Jury in November 1982. After a trial by jury, appellant was convicted of manslaughter and sentenced to ten years in the penitentiary. Three issues are addressed on this appeal.
Appellant first contends that the police illegally questioned him after he made known his desire for an attorney. During the course of a tape recorded interview, the following exchange occurred:
 "Q. Okay, Allen, I understand that you have already been advised of your rights prior to this. I'm going to run through them quickly again. I want you to answer me after each one of them if you understand those rights, okay?
"A. Okay.
 "Q. First of all, you have the right to remain silent and do not have to make any statement at all; do you understand that?
"A. Yes, sir.
 "Q. Any statement that you make can be used against you in a court of law; do you understand that?
"A. Yes, sir.
 "Q. You have the right to have an attorney present with you during any questioning; do you understand that?
"A. Yes, sir.
 "Q. If you want an attorney and cannot afford one, the Court will appoint one for you; do you understand that?
"A. Yes, sir; I don't have the money for one.
 "Q. At any time during the questioning you may request the questioning to be stopped and it shall be stopped; you understand that?
"A. Yes, sir.
 "Q. And with all these rights in mind and understanding them, Allen, do you wish to talk to us at this time?
 "A. Yes, sir. I would like to get it straightened out." [Emphasis added.]
Appellant argues that the statement which indicated that he could not afford a lawyer was in fact a request for a lawyer.
The appellant did not make any definite request for a lawyer before he was questioned. The ambiguous statement, at most, indicated that appellant wanted appointed counsel, as opposed to retained counsel, to represent him. It does not indicate that the appellant was unwilling, or that he even hesitated, to answer questions. At no time before or during the questioning did appellant specifically request a lawyer to be present even though he was apprised of that right. Appellant had signed a waiver of rights form after it had been read to him and, prior to questioning, had been specifically asked if he wanted to talk at that time. Under the circumstances, the *Page 815 
officer was not required to initiate some form of inquiry designed to clarify the defendant's intentions. Owen v. State,418 So.2d 214 (Ala.Cr.App. 1982). The appellant, on several occasions, affirmatively stated that he understood his rights, and he waived those rights at least twice. He made a voluntary, knowing, and intelligent waiver of counsel.
The next contention is that appellant alleges he was threatened and coerced into making an inculpatory statement. On several occasions, the appellant was told, in essence, that he was lying and that his story would not stand up in court. Appellant was also urged to quit playing games and tell the truth so that his problems would not be compounded.
It is well settled that a confession is not made inadmissible because the accused is told that it is better for him to tell the truth. Eakes v. State, 387 So.2d 855 (Ala.Cr.App. 1978). Telling a defendant that he has lied is permissible. Allen v.State, 376 So. 826 (Ala.Cr.App. 1979). Confessions are not rendered inadmissible because they have been obtained by propounding to the accused questions assuming his guilt. Twymonv. State, 358 So.2d 1072 (Ala.Cr.App. 1978). It is clear from the record of this case that appellant's will was not overborne at the time he made his statement and that the statement was the product of a rational intellect and free will.
The last issue concerns the admission into evidence of a pair of men's boots. The boots, allegedly taken out of the trunk of a car that had been in appellant's possession, were muddied with red clay. They were turned over to a criminalist, James Small, who determined that the clay had come from the location where the deceased was found. Appellant challenges the State's chain of custody.
The following is a summary of the facts relevant to the issue. When appellant was arrested in Dadeville, he was in possession of a vehicle that belonged to the deceased. The deceased's brother-in-law, Danny Englebert, went to Dadeville to drive the car back to Mobile. Englebert turned the car over to Mobile police who kept it in their possession for two or three days.
Officer Pickett, a Mobile police officer, and Tim Morgan, the son of the deceased, cleaned out the trunk of the car while it was at the police station. Enough clothing to fill several large bags, a suitcase, and tools were removed from the trunk and carried to the police station. Some garbage, a tire, and some cord were left in the trunk. Officer Pickett testified that he could not remember if he had seen the boots while he was cleaning out the trunk.
After the clothing and other articles had been removed from the car, it was turned over to Morgan, who drove it to Englebert's apartment. Morgan began removing the remaining articles from the car's trunk, whereupon he found the pair of boots. He put the boots in the back of Englebert's truck. The boots were kept overnight in the bed of the truck, which was parked in front of an apartment complex. The next day Englebert was sorting through the items in his truck when he noticed the muddy boots. He took them to Officer Pickett, who turned them over to Sergeant Ivie, who, in turn, gave them to criminalist James Small. At the time Englebert had the boots in his possession, he knew where the deceased had been found.
During the course of the trial, the only person to identify the boots was criminalist Small. His only knowledge of the boots was that they had been given to him by Sergeant Ivie and that they were in the same condition as when given to him. Sergeant Ivie gave no testimony concerning the boots. He neither identified them nor testified that they were in the same condition as when he received them. The boots were never identified by Officer Pickett, Englebert, or Morgan. There was no evidence that the boots belonged to appellant except that they had allegedly been taken out of the trunk of the car he had been in possession of at one time. The car had been bought used by the deceased from an adult male. *Page 816 
The purpose of establishing a chain of custody is to show to a reasonable probability that there has been no tampering with an item of evidence. Congo v. State, 409 So.2d 475 (Ala.Cr.App. 1981). Identification and continuity of possession must be sufficiently established to afford ample assurance of the authenticity of the item. To establish a sufficient predicate for admission into evidence, it must be shown that there was no break in the chain of custody of the item. Ex parte Yarber,375 So.2d 1231 (Ala. 1978).
In the present case, the State is obligated to present evidence tending to show that the boots were found in the deceased's car, otherwise they have no connection to appellant. Assuming that the boots were in the car, the chain of custody began with police possession of the car. A complete break in the chain occurred when the car was turned over to Morgan. The boots, again assuming they were ever in the car, were in the possession of relatives of the deceased for two days.
Morgan and Englebert kept the boots in the bed of a truck parked in front of an apartment complex where anyone could have had access to them. The relatives knew where the victim was found; they had both the opportunity and motive to tamper with the evidence. They, in fact, volunteered this evidence, which was supposedly missed by police investigators. It is our opinion that the State did not, and cannot, establish a sufficient chain of custody of the boots. The possibility of tampering is not remote in this case, rather it is very probable.
Additionally, the State failed to establish that the boots introduced into evidence were the same ones received by Officer Pickett from Englebert. Sergeant Ivie was another missing link in the chain of custody. He received the boots from Pickett and later turned them over to criminalist Small. He never identified the boots at trial as the ones he received from Pickett; in fact, he never testified about the boots at all. Because the boots were illegally introduced into evidence, the case is reversed and remanded.
The foregoing opinion was prepared by Retired Circuit Judge JOSEPH J. MULLINS, serving as a judge of this court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the court.
REVERSED AND REMANDED.
All the Judges concur.