545 So.2d 146 (1988)
Robert Wesley HARRIS
v.
STATE.
6 Div. 336.
Court of Criminal Appeals of Alabama.
April 26, 1988.
On Return to Remand February 24, 1989.
Rehearing Denied April 14, 1989.
Certiorari Denied June 16, 1989.
J. Louis Wilkinson and Virginia A. Vinson, Birmingham, for appellant.
Don Siegelman, Atty. Gen., and William D. Little, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 88-958.
BOWEN, Presiding Judge.
Robert W. Harris was convicted for the capital offense involving robbery-murder and sentenced to life imprisonment without *147 the possibility of parole. Three issues are raised on this appeal from that conviction.

I
Harris argues that the State was guilty of racial discrimination in striking eight of the eleven prospective black jurors.
The prosecution used eight of its fifteen peremptory strikes to remove blacks from the jury venire. The State used seven peremptory strikes to remove whites from the jury. Without making a determination whether or not the defense had established a prima facie case of discrimination, the trial judge requested the State to explain its strikes.
The black venire persons struck and the prosecutor's stated reasons for striking them were:
"1. Elton Allen stated on voir dire that the defendant's face `looks familiar' and admitted that he `might know him.' The prosecutor stated that he has `this problem, he keeps that handerchief up to his face and his mouth all the time.... it is very irritating. And I felt like it would be irritating to the jury.'
"2. Harry Davis had an objection to the plea bargain which had been worked out with the co-defendant and stated that he did not want to sit on the jury.
"3. Barney Dunagan said he was opposed to capital punishment, did not want to sit in this case, and had `sat on a criminal-robbery case where he found the person not guilty.'
"4. Dexter Irby was young, single, and had a step brother who had been charged with burglary.
"5. Katie Hart was young, single, does not own her own home, and the prosecutor felt `she would relate' to the defendant.
"6. Willie Odum `knew that two people had already been convicted in this particular case' and the prosecutor `felt like... he might have some problems with the third person being convicted.' He said he knew `of and all about' co-defendant Goodgame.
"7. Doshie Hopkins was young, `was disinterested in the whole procedure,' and `seemed as if [he] might relate to this defendant looking at them being about the same age.' The prosecutor stated that by the way this person rolled his eyes and threw his head to the side whenever the prosecutor looked directly at him, he knew, based upon his considerable jury trial experience, that `that person is not with you, has no use for you and is not going to be with you throughout the trial.' Additionally, the prosecutor stated that Hopkins `seemed evasive, he never answered' questions and there `just wasn't enough information' on him.
"8. Brenda Honeycutt had been charged with a criminal offense."
At the conclusion of his individual explanations, the prosecutor stated that his strikes "are not based on race, they are not based on prejudice, they are not based on bias."
The trial judge found that the prosecutor had "given adequate reasons" and denied the defendant's "Batson motion."
Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) "changed a defendant's burden of proof on the issue of the prosecution's using peremptory challenges to systematically exclude blacks from serving on the jury." Ex parte Jackson, 516 So.2d 768, 770 (Ala.1986). Batson, although a "clear break" with past precedent, Allen v. Hardy, 478 U.S. 255, 106 S.Ct. 2878, 2880, 92 L.Ed.2d 199 (1986), made "no attempt to instruct these courts how best to implement our holding today." Batson, 476 U.S. at 99-100, n. 24, 106 S.Ct. at 1724, n. 24.
In this case, the trial judge made commendable and significant efforts to satisfy the Batson requirements. However, his attempts were hindered by the lack of any existing implementation procedures.
In Ex parte Branch, 526 So.2d 609 (Ala. 1987), decided after this defendant's conviction, the Alabama Supreme Court stated, "In this opinion we will set forth our understanding of the Batson decision, and the procedures that we believe must be followed to implement it." Branch, 526 So.2d *148 at 616 (emphasis added). Although a "Branch hearing" will not automatically be required in every case in which a "Batson hearing" has been conducted, see Ex parte Shelton, 521 So.2d 1038 (Ala.1988); Avery v. State, 545 So.2d 123 (Ala.Cr.App.1988); Scales v. State, 539 So.2d 1069 (Ala.Cr. App.1988) (Bowen, P.J., dissenting), Branch commands that this Court proceed with an abundance of caution in that regard.
This case must be remanded for further findings by the trial court under the specific guidelines of Branch. Of all the black prospective jurors struck by the State, juror Hart raises the most concern. With regard to that juror, we make two observations. First, "intuitive judgment or suspicion by the prosecutor is insufficient to rebut the presumption of discrimination. Batson, 476 U.S. at [97], 106 S.Ct. at 1723." Branch, 526 So.2d at 623. Second, "Failure by a prosecutor to explain [or satisfactorily explain] every peremptory strike of black jurors is not necessarily fatal to the prosecutor's ability to rebut a prima facie case; likewise, explanation of most of the strikes on nonracial grounds does not necessarily rebut the inference created by Batson that peremptory challenges constitute a jury selection practice that permits `those to discriminate who are of a mind to discriminate.' "United States v. David, 803 F.2d 1567, 1571 (11th Cir.1986). See also United States v. Forbes, 816 F.2d 1006, 1011 (5th Cir.1987).
In remanding this cause we recognize that, in almost every case, the prosecution tendered racially neutral explanations for challenging black jurors. See United States v. Forbes, 816 F.2d 1006, 1010 (5th Cir.1987) (two sons had been in trouble with the law, prosecutor sensed by juror's posture and demeanor that she was hostile to being in court); United States v. Cartlidge, 808 F.2d 1064, 1070-71 (5th Cir.1987) (young, single, and unemployed proper reason under particular facts of that case; avoided eye contact with prosecutor; brother had been convicted of robbery); United States v. Ratcliff, 806 F.2d 1253, 1256 (5th Cir.1986), cert. denied, 481 U.S. 1004, 107 S.Ct. 1625, 95 L.Ed.2d 199 (1987) (fell asleep during jury selection process); United States v. Mathews, 803 F.2d 325 (7th Cir.1986), reversed on another ground, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) (juror "had demonstrated a pointed disinterest in the proceedings evidenced not only by her tardiness but also by her posture and demeanor"); People v. Chambie, 189 Cal.App.3d 149, 234 Cal.Rptr. 308, 313 (1987) (jurors had relatives who had been prosecuted for crimes); People v. Moss, 188 Cal.App.3d 268, 233 Cal.Rptr. 153, 160 (1986) ("prosecutor's subjective impressions based on body language, demeanor and apparel were buttressed by reference to objectively observable overt actions by the prospective juror ... [indicating] a disdain for the proceedings, if not outright antagonism to the prosecutor and the court"); People v. Peters, 144 Ill.App.3d 310, 98 Ill.Dec. 731, 739, 494 N.E.2d 853, 861 (1986) ("prosecutor's belief that individuals with a propensity for detail and meticulousness, such as controllers or accountants, did not make good jurors in a criminal case"; hesitation in responding to whether juror would find defendant guilty if State proved guilt beyond a reasonable doubt); Phillips v. State, 496 N.E.2d 87, 89 (Ind.1986) (acquaintance with potential state witness, brother and sister previously convicted, familiar with law enforcement officer); Johnson v. State, 731 P.2d 993, 998-99 (Okla.Cr. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987) (reservations about death penalty, "venireman had a son the approximate age of appellant and may have over identified with him; one had two individuals in her immediate family who had been convicted of felonies"). But see People v. Trevino, 39 Cal.3d 667, 692, n. 25, 217 Cal.Rptr. 652, 666 n. 25, 704 P.2d 719, 733, n. 25 (1985) ("To suggest, ... that either body language ... or a conclusory notion that a juror might not form his own opinion ... rises to the level of specific bias... is to reduce the constitutional guarantee to meaningless superficialities.").
However, courts "should bear in mind that the command of Batson is to eliminate, not merely to minimize, racial discrimination *149 in jury selection." David, 803 F.2d at 1571.
"It is important to emphasize, as we did in United States v. David, 803 F.2d 1567, 1571 (11th Cir.1986), that under Batson, the striking of a single black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when there are valid reasons for the striking of some black jurors." United States v. Gordon, 817 F.2d 1538, 1541 (11th Cir.1987), vacated and remanded in part and reversed in part on another ground, 836 F.2d 1312 (11th Cir.1988).
As in Branch, "[a]fter reviewing this cause, we cannot conclude that the trial judge's findings should be affirmed; neither can we conclude, at this time, that we should reverse." Branch, 526 So.2d at 627. From the record, this Court cannot adequately determine the existence of "the types of evidence that can be used to raise the inference of discrimination," Branch, 526 So.2d at 622 or "the types of evidence that can be used to overcome the presumption of discrimination and show neutrality." Branch, 526 So.2d at 623. The three black prospective jurors who were not removed by the State are not identified in the record. While it might be assumed that these three remained on the jury, the record contains no affirmative showing. The record does contain the allegation of defense counsel that "all of these reasons could be found to relate to one or more white jurors that weren't struck." "Disparate treatment of members of the jury venire with the same characteristics, or who answer a question in the same or similar manner" is evidence which may raise an inference of discrimination. Branch, 526 So.2d at 623.
This cause is remanded "to the trial court for the purpose of allowing the trial judge to review again the proceedings conducted before him, using the guidelines adopted by ... [the Alabama Supreme Court in Branch]. In carrying out this responsibility, he may or may not conduct an additional hearing at which either party would be allowed to introduce evidence to show the bona fides, or lack thereof, of the State's peremptory challenges." Branch, 526 So.2d at 627. The trial court is directed to conduct proceedings consistent with the guidelines and principles expressed in Branch, and to file his findings and conclusions, as well as a transcript of any additional hearing which might have been conducted, with this Court within a reasonable period of time.

II
Co-defendant Willie Goodgame testified that he, the defendant, and Virgil Brownlee planned and committed the robbery of Jody's Lounge. He stated that immediately after the robbery, they returned to the residence of Reavor Jones, Brownlee's girlfriend, and sent Ms. Jones to buy some cocaine. When she returned, about fifteen minutes later, they all "used" the cocaine and the defendant almost overdosed.
Evidence of the defendant's use of cocaine was properly admitted to establish the motive for the robbery. "Evidence of the accused's commission of another crime is admissible if it tends to show a motive to commit the now-charged crime." C. Gamble, McElroy's Alabama Evidence § 69.01(7) (3rd ed. 1977). See Fields v. State, 362 So.2d 1319 (Ala.Cr.App. 1978). While this evidence "may have prejudiced the appellant in the eyes of the jury, yet, in criminal prosecutions the conduct and declarations of an accused on other occasions are relevant when they tend to shed light on his motives and intentions in doing the act complained of." Wright v. State, 279 Ala. 543, 549, 188 So.2d 272, 278 (1966).

III
In instructing the jury on the principles of accomplice liability, the trial judge stated, "With reference to the capital offense charged, ... the State has endeavored to prove to you that either this defendant Harris or Brownlee intentionally fired the fatal shot."
This was not an improper comment on the evidence. "[T]he court has the right to state to the jury the general tendencies of *150 the evidence, or the theories of the defense and of the prosecution." White v. State, 209 Ala. 546, 550, 96 So. 709, 713 (1923); Milligan v. State, 208 Ala. 223, 227, 94 So. 169, 172 (1922); McCovery v. State, 365 So.2d 358, 361 (Ala.Cr.App.1978).
This cause is remanded with instructions.
REMANDED WITH INSTRUCTIONS.
All Judges concur.

ON RETURN TO REMAND
BOWEN, Judge.
On remand, the trial court conducted an evidentiary hearing, issued a written opinion, and fully complied with the requirements of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), as interpreted in Ex parte Branch, 526 So.2d 609 (Ala.1987).
The record on return to remand shows that the prosecution used 8 of its 15 peremptory strikes against blacks and that 3 blacks actually served on the jury. Juror Hart was struck because she was young, single, did not own her own home, and lived in a community close to where the robbery/murder was planned. The trial judge said that the "state attorneys have given evidence that they struck white jurors because of the commonalities of youthful age, residence, and unmarried status," and concluded "that the state has given race neutral reasons for eliminating juror Hart-commonalities among other struck white jurors being age, single status, and residence."
At the conclusion of his written order, the trial judge held that, "the state did not discriminatorily strike any of the black jurors eliminated, that the state attorneys have given race neutral reasons for their strikes, [and that] these findings [are] supported by my observation and participation in the voir dire, by the trial transcript, and transcript on remand." Our review convinces us that the findings of the trial court are proper and are supported by the record.
The judgment of the circuit court is affirmed.
OPINION EXTENDED; AFFIRMED.
All Judges concur.