[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 694 
The appellant, Robert Lee Underwood, was convicted of robbery in the first degree in the Circuit Court for Covington County, in violation of § 13A-8-41, Code of Alabama 1975. The appellant was sentenced to 10 years in prison and was ordered to pay restitution.
The state's evidence tended to show that on the night of June 2, 1992, Underwood was picked up by Frank Gross outside a Tom Thumb convenience store in Opp where the appellant had been using a pay telephone. Gross testified to the following events. He asked Underwood if he knew of a place he could "get a drink or party." Underwood told Gross of a place down the road, and Gross asked Underwood if he could take him there because he was unfamiliar with Opp. Gross was not satisfied with the place he was taken to, so he returned to the convenience store for some beer. Gross purchased the beer and he and Underwood again left together in Gross's vehicle.
Gross further testified that while he was turning around on the side of the road, his truck became entangled in a barbed wire fence. He said that he and Underwood stopped to try and free the truck. He testified that while on the side of the road, the appellant hit him in the head with a wrench, yelling, "Give me your money, man, give me your money." He said that the appellant took his wallet and demanded that he give him the money he had in his pockets. He said that the appellant struck him in the head a few more times until he gave the appellant his money and that the appellant then got back into Gross's pick-up truck and drove away, leaving Gross bleeding on the side of the road.
Underwood, who was identified from the description given by Gross, was picked up and questioned by Investigator Marcus Nawlin of the Opp Police Department. Underwood admitted to having seen Gross at the Tom Thumb convenience store, but he denied getting into the truck with him. Underwood was released after questioning. Several hours later, Underwood was arrested when a police officer saw him burning something near some housing authority apartments. Gross's social security card was found in the remains of the fire. Later that day, Investigator Nawlin again questioned Underwood, and he admitted at that time striking Gross in the head with the wrench and taking his money and the truck.
Underwood testified at trial that he first saw Gross when Gross drove past him on Barnes Road. That is when Underwood says he got into the car with him. He testified that as they were driving around they heard a scraping noise from underneath the truck. According to Underwood, they got out of the truck and Gross made sexual advances towards Underwood. Underwood testified that he struck the victim with the wrench in an attempt to get away from the victim, who continued making sexual advances. The appellant did not deny that he took the victim's wallet, pocket money, and pickup truck. The appellant also admitted that he was burning the victim's wallet when he was arrested. *Page 695 
 I
The appellant initially argues that the court erred in denying his motion for a judgment of acquittal made at the end of the state's case.
In determining whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, we must accept as true the evidence introduced by the state, accord the state all legitimate inferences therefrom, and view the evidence in the light most favorable to the prosecution. McMillian v. State, 594 So.2d 1253
(Ala.Cr.App. 1991); Faircloth v. State, 471 So.2d 485
(Ala.Cr.App. 1984), aff'd, 471 So.2d 493 (Ala. 1985); Cumbo v.State, 368 So.2d 871 (Ala.Cr.App.), cert. denied, 368 So.2d 877
(Ala. 1979). Here, there was sufficient evidence introduced to present the case to the jury. "Conflicting evidence presents a jury question not subject to review on appeal, provided the state's evidence establishes a prima facie case." McMillian, 594 So.2d at 1263.
The evidence supports the jury verdict. Accordingly, the trial court did not err in denying Underwood's motion for a judgment of acquittal.
 II
Underwood further contends that the trial court erred in denying his motion for a mistrial. Specifically, he contends that the state violated Brady v. Maryland, 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose to him evidence in possession of the authorities that was favorable to him. He contends that the state did not tell him that they had evidence of inconsistent statements given to Investigator Nawlin by Gross.
The appellant is entitled to any exculpatory evidence — i.e. evidence favorable to his defense. The United States Supreme Court stated in Brady:
 "The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."
Brady, 373 U.S. at 87, 83 S.Ct. at 1196-97.
In order to prove a Brady violation, a defendant must show (1) that the prosecution suppressed evidence, (2) that the evidence was favorable to his defense, and (3) that the evidence was material. Ex parte Cammon, 578 So.2d 1089, 1091
(Ala. 1991); Ex parte Brown, 548 So.2d 993, 994 (Ala. 1989), citing Ex parte Kennedy, 472 So.2d 1106 (Ala. 1985), cert. denied, Kennedy v. Alabama, 474 U.S. 975, 106 S.Ct. 340,88 L.Ed.2d 325 (1985).
Underwood, in his discovery motion, requested "any information that is favorable to the defendant." Investigator Nawlin had taken two statements from Gross and had made notes regarding his interview with Gross. Underwood was not given the notes relating to either of the statements. The trial court found, after reviewing Nawlin's notes, that the two statements given by Gross were inconsistent and, consequently, exculpatory.
In the first statement, Gross told Investigator Nawlin that he had been riding through a neighborhood when he picked up Underwood. Gross also told Nawlin that Underwood had asked to pull off the road so that he could relieve himself, and that when he did so, Underwood attacked him. He said that Underwood began beating him while they were inside the cab of the truck, and that Underwood pulled him out of the truck after he finished beating him.
In Gross's second statement to Investigator Nawlin, he alleged that he had gotten out of the truck and had walked around to the passenger side of the truck when Underwood attacked him. Gross also told Investigator Nawlin that his pickup truck had become entangled in the barbed wire. Thus, the second statement, which was consistent with this trial testimony, was slightly different than the first.
Here, the statements were brought to the court's attention before the jury was charged. The trial court showed Gross's statements to Underwood. Underwood then recalled Investigator Nawlin and Gross to the witness stand for further questioning. *Page 696 
Underwood cross-examined both Investigator Nawlin and Gross, exploring the inconsistencies in Gross's statements. We do not condone the actions of the prosecutor in not disclosing before trial this exculpatory evidence; however, under the facts of this case, no reversible error occurred. The trial court did an excellent job of curing any error by showing Underwood the statements and by receiving the testimony of the appropriate additional witnesses before the trial concluded. The jury was aware of Gross's inconsistent statements and found Underwood guilty.
In most cases, concealment or late disclosure of exculpatory evidence such as this could constitute reversible error. Late or delayed disclosure denies the accused the opportunity to consider the evidence and its effect, to research the law, to locate and interview possible witnesses, and, in general, to prepare a case. It appears that in this case, Underwood and Gross were trying to arrange a sex-for-money transaction. The purchaser was beaten and the seller was found in possession of the purchaser's billfold. The defense or evidence in mitigation that could be based on this could have been presented as well without evidence of the contradictory statements.
Under the specific facts in this case, we find noBrady violation.
 III
The appellant further argues that the prosecution used its peremptory strikes in a racially discriminatory manner. He contends that the prosecution's removal of four of the seven blacks from the venire violated the United States Supreme Court's holding in Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
The party making the Batson objection must first make a prima facie showing of intentional racial discrimination before the court is required to entertain the reasons for striking the prospective jurors. Batson, 476 U.S. at 93-94,106 S.Ct. at 1721. The other party has the burden of showing clear, specific, and legitimate reasons for striking the prospective jurors. Batson, 476 U.S. at 97, 106 S.Ct. at 1723. However, "this showing need not rise to level of a challenge for cause."Ex parte Jackson, 516 So.2d 768, 772 (Ala. 1986).
In this case, the trial court found that a prima facia case of racial discrimination did exist, and the prosecution proceeded to offer his reasons for his peremptory strikes.
We have considered the reasons offered by the prosecutor for his strikes of the black prospective jurors, and we conclude that the reasons given for striking black venirepersons numbers 1, 24, 29, and 70 were race-neutral. Prospective juror number 1 was struck because her son had been prosecuted by the district attorney's office and had been convicted on the charge. Striking a prospective juror because a family member has been convicted of a crime is a valid race-neutral reason.Powell v. State, 548 So.2d 590 (Ala.Cr.App. 1988), aff'd,548 So.2d 605 (Ala. 1989). Prospective juror number 29 was struck because he had criminal charges pending against him. In Averyv. State, 545 So.2d 123 (Ala.Cr.App. 1988), we held this to be a race-neutral reason for removing a prospective juror.
The heart of the appellant's Batson argument centers around the removal of prospective jurors 24 and 70. The record shows that prospective jurors number 24 and 70 were removed because they both were acquainted with Underwood's family, knew Underwood, and lived in the same community as Underwood. Underwood contends that these reasons, in the context of this case, were not sufficient to rebut the showing of racial discrimination. Specifically, he argues that in this case, most of the blacks eligible for jury duty would live in the same community, and that, therefore, they would all know one another.
We have recently held that, "the fact that the prospective juror knows the defendant is a race-neutral reason for removing the venireperson from the venire." Williams v. State,620 So.2d 82, 85 (Ala.Cr.App. 1992); Harris v. State, 545 So.2d 146
(Ala.Cr.App. 1988). A bias relating to the particular case or to the parties or witnesses is a permissible basis for exclusion of a prospective juror. Ex parte Branch, *Page 697 526 So.2d 609, 624 (Ala. 1987). See also People v. Wheeler, 22 Cal.3d 258,276, 583 P.2d 748, 760, 148 Cal.Rptr. 890, 902 (1978).
Further, three blacks served on the jury. The percentage of blacks serving on the jury was well above the percentage of blacks in the population as a whole in Covington County, Alabama.
Last, we will reverse the trial court's determination that noBatson violation occurred only when that determination is "clearly erroneous." Williams, 620 So.2d at 85
(Ala.Cr.App. 1992); Ex parte Lynn, 543 So.2d 709, 712
(Ala. 1988), cert. denied, 493 U.S. 945, 110 S.Ct. 351,107 L.Ed.2d 338 (1989). The trial court's ruling that no Batson
violation occurred was not clearly erroneous.
 IV
Underwood argues that the trial court erred in allowing the prosecution to introduce statements he made while in custody. Specifically, Underwood contends that the statements were inadmissible because, he says, they were involuntary.
The evidence tended to show that on June 2, 1992, Underwood gave two statements to the police. Underwood was taken to the police station around 2:15 a.m. and was questioned by Investigator Nawlin. Investigator Nawlin advised Underwood of his Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966), rights. Underwood signed a waiver form indicating that he had been advised of his Miranda rights and that he had waived them. Investigator Nawlin testified that the statement given at this time was freely and voluntarily given. In this statement, Underwood denied getting in the truck with Gross and denied having any knowledge of the robbery. Thereafter, Underwood was photographed, fingerprinted, and released.
The second statement was given on the same day at approximately 1:45 p.m. At this time, Underwood was under arrest and had been detained in jail since 5:30 a.m. Investigator Nawlin testified that earlier that morning while he was being booked, Underwood had indicated that his earlier statement was not true and that he wanted to speak to Nawlin again so that he could tell the truth. After booking, Officer Mike McDonald, an investigator with the Opp Police Department, spoke to Underwood and told him that a witness had seen him and Gross in the truck together the night of the robbery. Officer McDonald also told Underwood that he should be truthful with Nawlin. Thereafter, at approximately 1:45 p.m., Underwood gave his second statement. Again, Underwood was advised of hisMiranda rights, and he again signed a waiver. Nawlin testified that Underwood was not coerced in any way to make this second statement. In the second statement, Underwood admitted to being in the truck with Gross and admitted to beating Gross and taking his money and his truck. Underwood stated that he struck the victim only after Gross had made sexual advances towards him.
"All extrajudicial statements are deemed involuntary."Franklin v. State, 621 So.2d 364 (Ala.Cr.App. 1992); Smith v.State, 623 So.2d 369, 372 (Ala.Cr.App. 1992). Before an accused's confession can be admitted into evidence, the state must show that the accused has been advised of his rights underMiranda that the accused has waived those rights, and that the statement was voluntary. Henderson v. State 583 So.2d 276
(Ala.Cr.App. 1990), aff'd, 583 So.2d 305 (Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992),Wyatt v. State, 620 So.2d 77 (Ala.Cr.App. 1992).
Because there is no question that Underwood was advised of his Miranda rights and that he executed a waiver of those rights, the only question remaining is whether the statements were made voluntarily.
The Supreme Court of Alabama has stated:
 "The true test of voluntariness of extra-judicial confessions is whether, under all the surrounding circumstances, they have been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor; and if so, whether true or false, such confessions must be excluded from the considerations of the *Page 698 
jury as having been procured by undue influence."
Guenther v. State, 282 Ala. 620, 623, 213 So.2d 679, 681
(1968), cert. denied, 393 U.S. 1107, 89 S.Ct. 916,21 L.Ed.2d 803 (1969). See also Franklin, supra. This court has held that any implied promise, however tenuous, renders a statement to police involuntary and the product of coercion. Wyatt, supra. See also C. Gamble, McElroy's Alabama Evidence § 200.01(1) (4th ed. 1991). However, advising a person to tell the truth does not render a statement involuntary. Golden v. State,439 So.2d 813, 815 (Ala.Cr.App. 1983). Further, "[c]onfessions are not rendered inadmissible because they have been obtained by propounding to the accused questions assuming his guilt."Golden, 439 So.2d at 815. After reviewing the record and applying the law applicable to extrajudicial statements, we hold that the court did not err in receiving the statements into evidence.
 V
Underwood's final argument on appeal is that the trial court erred in denying his requested jury instructions concerning self-defense.
The appellant has failed to preserve this issue for review. A review of the record shows that the appellant objected to the court's failure to give the requested charges, which addressed self-defense, but that he did not detail the grounds of his objection. It is settled law that the appellant must statespecific grounds for an objection to an oral charge, and he must define the perceived defect sufficiently to give the trial judge the opportunity to correct any error. Kyser v. State,513 So.2d 68 (Ala.Cr.App. 1987); Burkett v. State, 439 So.2d 737
(Ala.Cr.App. 1983).
Even had the appellant's issue been preserved for review, he would not prevail. The requested charges were substantially covered in the trial court's oral charge. The trial court instructed the jury on the applicable statute dealing with self-defense. This statute encompassed the substance of the charges requested by the appellant. "It is a well-settled rule that when a written requested charge is refused, there is no prejudicial error when the requested charge is substantially covered in the court's oral charge." Weeks v. State,611 So.2d 1156, 1158 (Ala.Cr.App. 1992).
For the foregoing reasons, the judgment in this cause is due to be affirmed.
AFFIRMED.
All the Judges concur.