The appellant, Martin Anthony Gunter, was convicted of sexual torture, a violation of § 13A-6-65.1, Code of Alabama 1975, and of sexual misconduct, a violation of § 13A-6-65, Code of Alabama 1975. The jury acquitted him on the charges of rape in the first degree, sodomy in the first degree, and a separate count of sexual torture. He was sentenced to 10 years' imprisonment on his conviction for sexual torture, and that sentence was split so that he was to serve three years in the penitentiary and was placed on probation for the remainder of the sentence. In addition, he was sentenced to six months in jail on his conviction for sexual misconduct and that sentence was to be served concurrently with his sentence for sexual torture.
The state's evidence tended to show that on August 25, 1993, the appellant sexually tortured M.M. by penetrating her vagina with the barrel of a .410 shotgun.
M.M. testified that during the afternoon of August 25, 1993 she talked with her friend, Becky Grider, about going out that night. Later that evening, M.M., Grider, and James Morrill went to the appellant's trailer. The appellant's roommate, Steve Stafford, was the only one at the trailer. M.M. testified that Stafford left the trailer to meet the appellant at a bar called the Brass Rail. M.M. testified that she, Grider, and Morrill watched television at the trailer for approximately one and one-half hours while Stafford was away. M.M. testified that Stafford and *Page 1010 
the appellant returned at approximately 9:00 p.m. At that time, the group began drinking beer and playing a drinking game called "quarters" at the kitchen table. M.M. testified that they played for approximately 45 minutes, and that everyone then left except her and the appellant. M.M. decided to wait at the trailer for Grider who said that she would return shortly.
M.M. testified that after everyone left the appellant started talking about having sex with her and was telling her that she should break up with her boyfriend. She told him that she would not. He then asked her what she would do if he just picked her up and carried her to his room to have sex with him. Again, M.M. said that she was not interested in having sex with him. M.M. testified that she starting getting scared at that point. She said that she went into the bathroom and then came back out. She said that she was standing near the appellant's bedroom door and that he started talking about having sex again.
M.M. testified that the appellant pulled her clothes off and pushed her onto his bed. She said that she was crying and telling him to stop, and that he hit her in the face with his fist. She testified that she tried to scream, but that the appellant threatened to kill her if she was not quiet. He pointed a shotgun at her and told her he wanted to have sex with her. She testified that at one point he jumped up and looked out the doorway to the bedroom, but kept the shotgun pointed at her. Although M.M. appeared to have difficulty remembering the exact order of events, she testified that several events occurred. She said that the appellant tried to have sex with her, but that he was unable to because he could not maintain an erection. She also said that the appellant at some point inserted the tip of the shotgun and the tip of a broom handle in her vagina. She further testified that he later performed oral sex on her and tried to have sex with her again, but that she prevented him from doing so. M.M. further testified that at times the appellant would stop and apologize to her and talk about killing himself.
M.M. and the appellant heard an automobile approaching. M.M. testified that the appellant would not give her clothes to her, but that instead he gave her some shorts and a T-shirt to wear. Grider came in and agreed to take her home. While Grider was driving her home, M.M. told Grider what had happened. When they arrived at M.M.'s house, M.M.'s friend Terrance Mann, was waiting outside. She said that she did not want to talk to him and that she went inside to go to bed. Mann remained outside and started honking his car horn. M.M. called the police to get him to stop. When the police came, M.M. told them about the events that she alleged had occurred at the appellant's trailer earlier that evening. She then went to Lyster Army Hospital for a physical examination, photographs, and "rape kit" or "sexual assault kit" examination.
William H. Landrum, a forensic serologist with the Alabama Department of Forensic Sciences, examined the shotgun and the broom handle taken from the appellant's trailer. He testified that the tips of both contained vaginal epithelium cells, which, in his opinion, resulted from vaginal contact.
The trial court allowed the appellant to present two witnesses to testify about prior sexual contact between the appellant and M.M. The court allowed this testimony after anin camera offer of proof by the appellant pursuant to the exception in § 12-21-203(c), Code of Alabama 1975. Section12-21-203 is commonly known as the "rape shield statute." The appellant, Robert Donald, and Brian Etheridge testified about a party they had attended with M.M. in March 1993 at which M.M. was present. They testified that they had all spent the day at the river with a group of other people. At dark, the party moved to the Steve Stafford's trailer (where the appellant lived at the time of the crime). The appellant and Donald testified that M.M. removed her entire bathing suit and walked around naked for about one and one-half hours. Also, they both testified that she allowed several of the men at the party, including the appellant, to touch her breasts and to touch her between her legs. Etheridge testified that while he was at Stafford's trailer M.M. had removed the top of her two-piece bathing suit and that he saw several people, including the appellant, touch her. *Page 1011 
However, he testified that he left early and did not ever see M.M. completely naked. All three testified that she did not resist any of the contact.
The appellant raises four issues on appeal.
 I
The appellant first contends that the trial court erred in denying his motion for a judgment of acquittal. More specifically, he contends that the state could not have proved a prima facie case because the jury acquitted him on other counts of the indictment similar to the ones on which it convicted him.
 "In determining whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, we must accept as true the evidence introduced by the state, accord the state all legitimate inferences therefrom, and view the evidence in the light most favorable to the prosecution. McMillian v. State, 594 So.2d 1253
(Ala.Cr.App. 1991); Faircloth v. State, 471 So.2d 485 (Ala.Cr.App. 1984), aff'd, 471 So.2d 493
(Ala. 1985); Cumbo v. State, 368 So.2d 871
(Ala.Cr.App. 1978), cert. denied, 368 So.2d 877
(Ala. 1979)."
Underwood v. State, 646 So.2d 692, 695 (Ala.Cr.App. 1993).
The appellant was charged in a four-count indictment with rape in the first degree, sodomy in the first degree, and two counts of sexual torture (one for use of the broom handle and one for use of the shotgun). He was acquitted on the charges of rape in the first degree, sodomy in the first degree, and one count of sexual torture (use of the broom handle). He contends that because he was acquitted on these charges, the state could not have proven the element of forcible compulsion present in the crime of sexual torture. In other words, he argues that the verdicts are inconsistent.
In United States v. Powell, 469 U.S. 57, 105 S.Ct. 471,83 L.Ed.2d 461 (1984), the United States Supreme Court upheld the rule enunciated in Dunn v. United States, 284 U.S. 390,52 S.Ct. 189, 76 L.Ed. 356 (1932), "that a criminal defendant convicted by a jury on one count could not attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count." The Court recognized that a jury might very well reach inconsistent verdicts on different offenses through "mistake, compromise, or lenity." Powell,469 U.S. at 65, 105 S.Ct. at 476, 83 L.Ed.2d at 468. However, neither the government nor the defendant can challenge such verdicts. 469 U.S. at 65, 105 S.Ct. at 477, 83 L.Ed.2d at 468. "Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." Powell, 469 U.S. at 66,105 S.Ct. at 477, 83 L.Ed.2d at 469. This court has recognized this rule. Inmon v. State, 585 So.2d 261, 268
(Ala.Cr.App. 1991); Hammond v. State, 497 So.2d 558
(Ala.Cr.App. 1986). In reality, it is common for the prosecuting authority to indict on multiple counts and for the jury to convict on only one.
Furthermore, the Court in Powell distinguished an attack on inconsistent verdicts from a review of the sufficiency of the evidence.
 "Finally, we note that a criminal defendant is already afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts. This review should not be confused with the problems caused by inconsistent verdicts. Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt. This review should be independent of the jury's determination that evidence on another count was insufficient. The Government must convince the jury with its proof, and must also satisfy the courts that given this proof the jury could rationally have reached a verdict of guilty beyond a reasonable doubt. We do not believe further safeguards against jury irrationality are necessary."
Powell, 469 U.S. at 67, 105 S.Ct. at 478, 83 L.Ed.2d at 470. (Citations omitted.) *Page 1012 
Therefore, this court will not consider the appellant's claim of inconsistent verdicts. We will consider the sufficiency of the evidence pursuant to the above-stated standard. M.M. testified that the appellant penetrated her vagina with the barrel of the shotgun and that he performed oral sex on her. She further testified that she was afraid to resist because he kept the shotgun pointed at her the entire time. The forensic evidence tended to show that the barrel of the shotgun had been in contact with a vagina. This evidence made out a prima facie case. Viewing the evidence in the light most favorable to the state, we hold that the state presented sufficient evidence from which the jury could infer that the appellant was guilty of sexual torture and sexual misconduct. Although the appellant presented evidence tending to show that M.M. consented, the jury chose not to believe it. We will not substitute our judgment for that of the jury. Owens v. State, 597 So.2d 734,737 (Ala.Cr.App. 1992).
 II
The appellant next contends that the trial court erred in refusing to instruct the jury on sexual abuse in the first degree, a violation of § 13A-6-66, Code of Alabama 1975, as a lesser included offense of sexual torture.
The statute making sexual torture a crime in Alabama became effective on August 11, 1993. This court is unaware of any cases dealing with this statute before this case. Therefore, this issue is one of first impression for this court. Therefore, we will examine the statutory definitions of sexual torture and sexual abuse in the first degree as well as the law regarding lesser included offenses.
Section 13A-6-65.1, Code of Alabama 1975, defines the crime of sexual torture:
"(a) A person commits the crime of sexual torture:
 "(1) By penetrating the vagina or anus or mouth of another with an inanimate object by forcible compulsion with the intent to sexually torture or sexually abuse.
 "(2) By penetrating the vagina or anus or mouth of a person who is incapable of consent by reason of physical helplessness or mental incapacity with an inanimate object, with the intent to sexually torture or sexually abuse.
 "(3) By penetrating the vagina or anus or mouth of a person who is less than 12 years old with an inanimate object, by a person who is 16 years old or older with the intent to sexually torture or sexually abuse."
 "(b) The crime of sexual torture is a Class A felony."
(Emphasis added.)
Section 13A-6-66, Code of Alabama 1975, defines sexual abuse:
 "(a) A person commits the crime of sexual abuse in the first degree if:
 "(1) He subjects another to sexual contact by forcible compulsion; or
 "(2) He subjects another person to sexual contact
who is incapable of consent by reason of being physically helpless or mentally incapacitated; or
 "(3) He, being 16 years or older, subjects another person to sexual contact who is less than 12 years old.
 "(b) Sexual abuse in the first degree is a Class C felony."
(Emphasis added.)
Section 13A-6-60, Code of Alabama 1975, defines "sexual contact," as that term is used in the statutes defining sexual offenses, as "[a]ny touching of the sexual or other intimateparts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party." (Emphasis added.)
We hold that sexual abuse in the first degree is a lesser included offense of sexual torture. A trial court should give a jury instruction to that effect if the facts and circumstances of the case warrant such an instruction. The definition of sexual torture incorporates sexual abuse by reference by using the phrase "with the intent to sexually torture or sexually abuse." (Emphasis added.) Also, the definition of sexual contact broadly includes "[a]ny touching
of the sexual or other intimate parts of a person not married to the actor." "Although penal statutes *Page 1013 
are to be strictly construed, courts are not required to abandon common sense." Musgrove v. State, 519 So.2d 565, 582
(Ala.Cr.App.), aff'd, 519 So.2d 586 (Ala. 1986), cert. denied,486 U.S. 1036, 108 S.Ct. 2024, 100 L.Ed.2d 611 (1988). "Words used in the statute are must be given their natural, plain, ordinary, and commonly understood meaning." Musgrove, 519 So.2d at 583. Under the definition of "sexual contact," "any touching of the sexual or other intimate parts" should be construed literally to mean any touching, whether directly or using an inanimate object.
In this case, however, the evidence did not absolutely mandate an instruction on sexual abuse in the first degree as a lesser included offense of sexual torture.
Section 13A-1-9, Code of Alabama 1975, provides:
 "(a) A defendant may be convicted of an offense included in an offense charged. An offense is an included one if:
 "(1) It is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged . . .
". . . .
 "(b) The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."
 "In determining whether one offense is a lesser included offense of another, a court must 'take into account the facts of each case,' and should not consider the potential relationship of the two offenses 'only in abstract terms and completely [ignore] the facts of [the] case and indictment under which [the defendant] was charged.' [Ex parte] Jordan, 486 So.2d [485] at 488 [(Ala. 1986)]."
Farmer v. State, 565 So.2d 1238, 1240 (Ala.Cr.App. 1990).
The sexual torture statute was narrowly and specifically drafted to encompass a certain set of facts. That set of facts is precisely what the state's evidence tended to show here: penetrating the vagina of another with an inanimate object by forcible compulsion. The case here is rendered more egregious by the fact that the "inanimate object" was a deadly weapon. The state's forensic evidence of vaginal epithelium cells found on the shotgun along with M.M.'s testimony tended to show that the barrel of the shotgun had been in contact with M.M.'s vagina. Under these facts, the appellant was either guilty of sexual torture or he was innocent. When the evidence clearly shows that the appellant is either guilty of the offense charged or is innocent, the charge on a lesser included offense is not essential. The fact that the inanimate object was a deadly weapon, and that such fact was known to the victim, totally fulfills the "torture" aspect of the offense.
We hold that the trial court did not err in refusing to instruct the jury on sexual abuse in the first degree under the facts presented.
 III
The appellant next contends that the trial court incompletely and incorrectly defined the forcible compulsion element of sexual torture.
Section 13A-6-65.1(a)(1), Code of Alabama 1975, the provision of the sexual torture statute under which the appellant was convicted, provides:
"(a) A person commits the crime of sexual torture:
 (1) By penetrating the vagina or anus or mouth of another person with an inanimate object by forcible compulsion with the intent to sexually torture or sexually abuse."
Section 13A-6-60(8), Code of Alabama 1975, defines "forcible compulsion" as follows:
 "FORCIBLE COMPULSION. Physical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person."
The appellant contends that the trial court erred because it omitted the modifier "immediate" before "death or serious injury" in its instruction defining "forcible compulsion." Also, the appellant contends that the trial *Page 1014 
court erred because it did not define "earnest resistance" or "serious physical injury."
When reviewing jury charges, we must examine the entire charge as a whole, and the language of the charge must be given a reasonable construction, not a strained and unreasonable one.Carroll v. State, 599 So.2d 1253, 1270 (Ala.Cr.App. 1992), aff'd, 627 So.2d 874 (Ala. 1993), cert. denied, ___ U.S. ___,114 S.Ct. 1207, 127 L.Ed.2d 554 (1994). An inadvertent error in an instruction that does not cause prejudice is not reversible error. Bighames v. State, 440 So.2d 1231, 1234
(Ala.Cr.App. 1983). Furthermore, this court has held that the statutory definition of rape as "sexual intercourse with a female by forcible compulsion" is "so clear and unambiguous that no person intelligent enough to be juror could err as to the meaning." Parrish v. State, 494 So.2d 705, 715
(Ala.Cr.App. 1985), quoting Davenport v. State, 426 So.2d 473,476 (Ala.Cr.App. 1982).
We hold that, taken as a whole, the trial court's jury charges adequately instructed the jury on the law in this case. The omission of the word "immediate" did not vary so much from the statutory definition of "forcible compulsion" as to prejudice the appellant. Also, the trial court read the definition of "forcible compulsion" twice to the jury. It did not need to further define every element in that definition. The jury took a common sense view of the instructions and gave the words used therein their plain and apparent meaning.
 IV
The appellant last contends that the trial court erred in failing to charge the jury on the statutory definition of "lack of consent" based on § 13A-6-70, Code of Alabama 1975.
Section 13A-6-70, Code of Alabama 1975 states:
 "(a) Whether or not specifically stated, it is an element of every offense defined in this article, with the exception of subdivision (a)(3) of Section 13A-6-65, that the sexual act was committed without consent of the victim.
"(b) Lack of consent results from:
"(1) Forcible compulsion; or
"(2) Incapacity to consent; or
 "(3) If the offense charged is sexual abuse, any circumstances, in addition to forcible compulsion or incapacity to consent, in which the victim does not expressly or impliedly acquiesce in the actor's conduct."
As discussed above, the state was required to prove the element of forcible compulsion in order to prove the crime of sexual torture. However, under the above statutory definition "lack of consent" and "forcible compulsion" are synonymous in this context. The record reflects that the jury was sufficiently instructed on the definition of forcible compulsion. A trial court commits no error in refusing requested charges when the court's oral charge substantially covers the same principles of law. McCain v. State,611 So.2d 1123, 1126 (Ala.Cr.App. 1992).
For the foregoing reasons, the judgment in this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.