The appellant, Carl Eugene Allen, was indicted for sexual abuse in the first degree *Page 40 
and sodomy in the first degree, violations of §§ 13A-6-66 and13A-6-63, Code of Alabama 1975, respectively. He was convicted of sexual abuse and acquitted on the sodomy charge. He was sentenced to 18 years' imprisonment in the state penitentiary.
The states evidence tended to show that the appellant sexually abused his stepdaughter, E.K., over a period of five years. E.K., who was 13 at the time of the trial, testified that the appellant began touching her in "private places" between her legs when she was 6 years old. She testified that she lived with her grandmother at the time and that the abuse occurred when she visited her mother and the appellant at their apartment on weekends. E.K. testified that the touching continued until she was 11 years old, at which time she told her mother about the abuse. E.K.'s mother then contacted the authorities. Dr. Michael Taylor, assistant professor of pediatrics with the University of Alabama School of Medicine, testified that he examined E.K. and found genital scarring consistent with sexual abuse.
The appellant was also charged with sodomizing his stepson, D.K.; however, the jury acquitted him of this charge.
The appellant raises eight issues on appeal.
 I
The appellant first contends that the trial court erred in consolidating for trial the separate indictments of sexual abuse and sodomy. The appellant was charged with sexually abusing E.K. and with sodomizing her brother D.K. The appellant specifically contends that because the two offenses involved different types of conduct against different victims, the offenses could not legally be consolidated.
Rule 13.3(c), Ala.R.Crim.P., provides that separate indictments may be consolidated, if they "could have been joined in a single indictment, information or complaint." The requirements for joinder are listed in Rule 13.3(a), which states:
 "(a) Offenses. Two or more offenses may be joined in an indictment, information, or complaint, if they:
"(1) Are of the same or similar character; or
 "(2) Are based on the same conduct or are otherwise connected in their commission; or
 "(3) Are alleged to have been part of a common scheme or plan."
The most important consideration in determining whether crimes are of similar character, is whether evidence of one offense would have been admissible in a trial of the other offense. Nickerson v. State, 523 So.2d 504 (Ala.Cr.App. 1987). The question whether evidence of collateral sexual offenses against victims not named in a particular indictment may be received into evidence was recently addressed by this court inRegister v. State, 640 So.2d 3 (Ala.Cr.App. 1993), aff'd,680 So.2d 225 (Ala. 1994). In Register, this court held that the admissibility of evidence of collateral sexual offenses may not be determined "simply by pigeonholing it under the category of 'motive' evidence; instead the question of its admissibility must be resolved by analyzing that evidence in light of the four factors suggested in Bowden [v. State, 538 So.2d 1226
(Ala. 1988)]." Register, 640 So.2d at 7. The factors listed inBowden are "(1) the offense(s) charged; (2) the circumstances surrounding the offense(s) charged and the collateral offense(s); (3) the other collateral evidence offered at trial, and (4) the other purpose(s) for which it is offered." Bowden, 538 So.2d at 1237-38.
First, the offenses charged in this case both involve sexual relations with persons under the age of 12 by forcible compulsion. Second, the circumstances surrounding the offenses are very similar. The victims were brother and sister, and the offenses were allegedly committed by the appellant during the same time period. The offenses allegedly occurred when the victims were visiting the appellant for the weekend and were in bed at night. Third, because D.K. was impeached on cross-examination, there was a need to " 'corroborate and substantiate the testimony of the victims.' "Register, 640 So.2d at 8, quoting J.D.S. v. State,587 So.2d 1249, 1255 (Ala.Cr.App. 1991). Fourth, the siblings' testimony demonstrates the appellant's motive for committing the acts — his *Page 41 
"unnatural sexual passion for his [step] child[ren]."Bowden, 538 So.2d at 1235.
In J.D.S., this court, applying the factors in Bowden, found that evidence of the appellant's alleged abuse of his stepson was relevant to prove the appellant's motive in sexually abusing his stepdaughter. The court noted that the fact that one offense involved a male and the other a female was not significant. We similarly find that evidence of the appellant's abuse of E.K. and sodomy as to D.K. would be admissible in the trial of either offense. The appellant has failed to show that he was prejudiced by the consolidation of the indictments. The trial court did not err in consolidating the indictments.
Furthermore, because the appellant was acquitted of the sodomy charge related to D.K., he cannot on appeal allege any defects as to this charge. As this court stated in McCain v.State, 611 So.2d 1123, 1124 (Ala.Cr.App. 1992): "The charge upon which the conviction rests is the only charge that is subject to appellate review."
 II
The appellant next contends that the trial court erred in denying his motion for a mistrial based on the seating arrangement during voir dire examination of the venire. Specifically, the appellant contends that because of the large number of state witnesses, investigators, and relatives present and seated next to him, he was unable to privately confer with his counsel during voir dire.
A defendant has certain rights regarding his seating in the courtroom.
 " 'As a general rule, during his trial, one indicted for a felony has, with respect to his seating in the courtroom, three basic rights: (1) To be present at all stages of the trial; (2) to be confronted with, and hence be able to hear, the witnesses against him, and (3) the right of counsel which includes free access to his attorney.' "
Tucker v. State, 398 So.2d 417, 419 (Ala.Cr.App. 1981). The appellant was afforded these rights. The record indicates that the appellant was given ample opportunity to confer privately with his counsel. The trial court stated for the record that its reason for having all the trial participants seated in the front of the courtroom was for the convenience of the prospective jurors. "This court will not reverse a trial court's ruling related to the conduct in its courtroom unless the trial court has abused its discretion." Armstead v. State,659 So.2d 188, 191 (Ala.Cr.App. 1994). We are, however, prepared to reverse a judgment in a case in which the accused is not accorded the right to confidential communications at all stages of a trial. As best we can tell from this record, the trial court did not abuse its discretion and did not err in denying the appellant's motion for a mistrial.
 III
The appellant contends that the trial court erred in denying his challenges for cause of certain veniremembers. The record reveals that nine jurors responded affirmatively when asked by defense counsel, "[H]ow many of you would expect to hear Mr. Allen tell his side of the story? How many of you would expect him to testify in this case and tell you his side of the story?" The record also indicates that two jurors responded affirmatively when defense counsel asked, "Do you think that because someone is drinking [alcoholic beverages] that they are more likely to commit a criminal act or that they're more likely to commit an act such as what Mr. Allen is charged with?" Two jurors also responded affirmatively to the defense counsel's asking whether they thought the consumption of alcoholic beverages was morally wrong.
 " 'The test to be applied in determining whether a juror should be removed for cause is whether the juror can eliminate the influence of his previous feelings and render a verdict according to the evidence.' Rowell v. State, 570 So.2d 848, 855
(Ala.Crim.App. 1990). '[A] prospective juror should not be disqualified for prejudices or biases if it appears from his or her answers and demeanor that the influence of those prejudices can be eliminated and a verdict rendered according to the evidence.' Knop v. McCain, 561 So.2d 229, 232 (Ala. 1989)." *Page 42 
Johnson v. State, 651 So.2d 1085, 1087 (Ala.Cr.App. 1994).
In this case, the prospective jurors were questioned thoroughly on these issues. The nine jurors who responded affirmatively when asked whether they expected to hear the appellant give his side of the story all indicated that they could render an impartial verdict based on the facts and on the law as instructed. The two jurors who responded affirmatively when asked whether they believed drinking would make someone more likely to commit a criminal act also indicated that they could render an impartial verdict based on the facts and on the law as instructed. In addition, the two jurors who indicated that they thought drinking alcoholic beverages was morally wrong also indicated that they could render an impartial verdict based on the facts and on the law as instructed. It was not error for the trial court to deny the appellant's challenges for cause as to these prospective jurors.
 IV
The appellant next contends that the trial court erred by denying his motion for a mistrial based on the circuit clerk's excusing eight prospective jurors from jury service. The appellant asserts that the dismissal of these jurors, 6 of whom were under 30 years of age, skewed the age and gender distribution of the jury venire. The trial court has discretion under § 12-16-63, Code of Alabama 1975, to excuse potential jurors from jury service. That section reads in part:
 "(b) A person who is not disqualified for jury service may be excused from jury service by the court only upon a showing of undue hardship, extreme inconvenience or public necessity. . . ."
Circuit Clerk Doris Turner testified that after there were enough prospective jurors from which to strike a jury, she individually assessed requests by potential jurors to be excused. She testified that all those excused had legitimate reasons to be excused based on undue hardship or extreme inconvenience. She further testified that most of those excused were students at the University of Alabama with pending final exams. The trial court did not err by denying the appellant's motion for a mistrial based on the dismissal of these prospective jurors.
 V
The appellant next contends that he was prejudiced by comments made by the prosecutor in opening statement and that he was therefore, denied a fair trial. The following occurred during opening statements:
 "MRS. DEMOS [prosecutor]: May it please the court, opposing counsel — good morning. I just want to start by thanking you for going through this — This has already taken a considerable amount of time. And we appreciate y'all for this trial. And we ask y'all to listen to both sides of the case and all the evidence presented. The state doesn't want to send an innocent man to jail —
 "MR. HUDSON [defense counsel]: Object, Your Honor, move for mistrial. That's an improper statement by counsel. She's implying that they have reason to know something other than what they're showing here that this man is guilty. That's completely an improper statement by counsel."
The prosecutor invited the declaration of a mistrial or a reversal on appeal by following this line of argument. However, the trial court, after a bench conference, instructed the jurors to exclude from their minds the above portion of the prosecutor's opening statement. "There is a prima facie presumption against error when the trial court immediately charges the jury to disregard the improper remarks or answers."Wadsworth v. State, 439 So.2d 790, 793 (Ala.Cr.App. 1983), cert. denied, 466 U.S. 930, 104 S.Ct. 1716, 80 L.Ed.2d 188
(1984).
 VI
The appellant next contends that the trial court erred by refusing to allow him to play an audiotape of the victim's mother's statement to investigators. The appellant questioned E.K. regarding her brother's allegations against the appellant. The following occurred: *Page 43 
 "Q [Mr. Hudson]: I got you confused. Did [D.K.] tell your mother, himself, or did you tell your mother about [D.K.]?
 "A [E.K.]: I told my grandmother about it after he told me.
"Q: Did you tell your mother?
"A: I didn't. I think my grandmother did.
"Q: Did you talk to your mother about it?
"A: No, sir.
"Q: You never talked to your mother about it?
"A: No, sir.
 "Q: You don't recall you mother saying that she didn't believe —
 "MRS. DEMOS: Objection, Your Honor, blatant hearsay. May we approach?
"THE COURT: Yes, ma'am.
 "(The following was held at the bench sotto voce:)
 "MRS. DEMOS: Your Honor, I'm sorry. At this point, Mr. Hudson is going into what her mother believed or did not believe about [D.K.]'s story, [D.K.] told. First of all, that invades the province of the jury. There's case law — and I can get it — it says that invades the province of the jury to have somebody come in and say, they either believe or don't believe this child. And secondly, it's just blatant hearsay because the mother is not here. I don't anticipate the mother being here. She's unavailable. And it's hearsay."
The appellant attempted to introduce into evidence an audio-tape of an interview with the victim's mother where she stated that she did not believe D.K.'s allegations. The appellant contends that he was entitled to impeach E.K. with this tape.
Initially, we note that this evidence is classic hearsay and meets no exception to the hearsay rule. C. Gamble,McElroy's Alabama Evidence, § 242.01 et seq. (4th ed. 1991). "Hearsay consists of every human statement, not made in the process of testifying as a witness in the trial or contained in a deposition taken for use in the present trial, offered as tending to prove the truth of the matter stated." McElroy'sAlabama Evidence, § 242.01(1).
Further, the appellant was ultimately acquitted of the charges concerning D.K. Any questions concerning this charge are not correctly before this court. As stated above: "The charge upon which the conviction rests is the only charge that is subject to appellate review." McCain, 611 So.2d at 1124. Moreover, the evidence was not relevant for any purpose related to E.K.'s testimony.
 VII
The appellant next contends that the trial court erred by receiving into evidence a photograph of E.K. that was taken around the time of the incidents. The appellant claims that the photograph has no probative value and only served to prejudice him before the jury. A photograph may be received into evidence if it tends to "prove or disprove some disputed issue, . . . illustrate or elucidate some relevant fact or . . . corroborate or disprove some other evidence offered or to be offered." C. Gamble, McElroy's Alabama Evidence, § 123.03(1) (4th ed. 1991). Here, the victim's age was a material issue, therefore, the trial court did not err by admitting the photograph into evidence. § 13A-6-66, Code of Alabama 1975.
 VIII
Last, the appellant contends that the use of certain "phrases" during the trial court's jury instructions prejudiced him and prevented him from receiving a fair trial. Specifically, the appellant objects to the trial court's use of the word "victim," the description of the burden of proof as "simply" reasonable doubt, and the use of the phrase "prima facie case" without further explanation. "When reviewing jury charges, we must examine the entire charge as a whole, and the language of the charge must be given a reasonable construction, not a strained and unreasonable one." Gunter v. State,665 So.2d 1008, 1014 (Ala.Cr.App. 1995). See also Carroll v. State,599 So.2d 1253, 1270 (Ala.Cr.App. 1992), aff'd, 627 So.2d 874
(Ala. 1993), cert. denied, 510 U.S. 1171, 114 S.Ct. 1207,127 L.Ed.2d 554 (1994). Attempts to charge as to standards of proof, of course, invite reversal. In this instance, viewed as a whole, the court's instructions *Page 44 
adequately conveyed the law and were not prejudicial to the appellant.
For the foregoing reasons, the judgment in this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.